STATE v. J. W. HOLLINGSWORTH.

(Filed 21 April, 1926.)

**1. Constitutional Law—Common Law—Evidence—Letters and Papers Tending to Incriminate.**

The protection afforded to defendants in criminal actions by our Constitution, Art. I, sec. 11, is a matter of absolute right to them, and extends to the forced production of letters and other papers in their possession that may tend to incriminate them upon the trial.

**2. Same—Involuntary Production of Incriminating Evidence—Appeal and Error—Objections and Exceptions.**

Where the solicitor in a criminal action, in the presence of the jury at the trial, makes demand upon the prisoner that he produce certain letters and papers relevant thereto, which the prisoner asserts tend to incriminate himself contrary to Article I, sec. 11 of the Constitution, and the trial judge orders their production, and the letters and papers were produced and introduced in evidence on behalf of the prosecution: *Held*, the production of the letters and papers was compulsory on the plaintiff, and under his exception to the order, constituted reversible error on appeal.

APPEAL by defendant from *Stack, J.,* at January Term, 1926, of FORSYTH.

The defendant was convicted of false pretense. C. S., 4277. The specific charge was that "unto Mary R. Craddock and W. G. Craddock he did falsely pretend that he represented clients who made loans on from two to twenty years terms on approved security and upon payment of the sum of $35.00, $15.00 of which had to be paid in advance, he would procure a loan for them or return the money thus advanced, less actual cost of appraisal"; whereas these representations were false; and by means thereof the defendant obtained from Mary R. Craddock and W. G. Craddock $15.00 in money, etc.

Judgment was pronounced upon the verdict and the defendant appealed, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*John D. Slawter and Fred M. Parrish for defendant.*

ADAMS, J. After reading an advertisement purporting to have been authorized by the defendant, Mary R. Craddock wrote him a letter inquiring whether he could procure for her a loan of $1,200 on certain property situated in or near Wentworth. The defendant replied, and thereafter several other letters passed between them. Substantially the entire negotiation was in writing; besides the letters it included two

applications for the loan, the first dated 12 December, 1923, and the second 28 January, 1924. On the day set for the trial the State served on the defendant a notice to produce "all letters and other correspondence between him and Mary R. Craddock and W. G. Craddock," written between specified dates, and while the trial was in progress the prosecution made a request in the presence of the jury that the defendant produce one of the applications signed by Mrs. Craddock. The facts are thus given in the record: "The solicitor asked for the application for the loan referred to in one or more of the letters between the parties, and the defendant insisted that the notice to produce did not cover such a paper. Thereupon, the court permitted the solicitor to give notice then in open court in the presence of the jury to produce the application at the reconvening of court at 2:30, to which order the defendant excepted. In obedience to the order the defendant did produce the application, and upon objection over defendant's protest delivered it to the solicitor for the State, the defendant objecting to being required to produce it or any statement in regard to it being made in the presence of the jury."

Counsel for defendant: "Your Honor said it was because it was not provided for in the notice. We object, because in the opinion of the defendant the State is endeavoring to force him to produce evidence upon which to convict himself." The counsel also said, "Your Honor made an order that the defendant produce the application, which we do produce, and again object to being forced to produce it."

The same objection was interposed to the production of certain letters which were in the defendant's possession. To the order requiring the defendant to produce the application and the letters he duly objected and excepted. The letters and the application were then introduced in evidence by the State.

The Constitution provides: "In all criminal prosecutions every man has the right to be informed of the accusation against him and to confront the accusers and witnesses with other testimony, and to have counsel for his defense, and not be compelled to give evidence against himself or to pay costs, jail fees, or necessary witness fees of the defense, unless found guilty." Art. I, sec. 11.

The object of the clause, "and not be compelled to give evidence against himself," is to secure a person who is or may be accused of a criminal offense against the compulsory disclosure of any fact or circumstance that could be used upon the trial as evidence tending to show his guilt. *La Fontaine v. Southern Underwriters,* 83 N. C., 133. This immunity extends, not only to one who actually testifies as a witness, but to the defendant in the trial, even though he decline to testify as a witness in his own behalf. It is intended to shield a person against the

STATE v. HOLLINGSWORTH.

involuntary production of his private papers in response to process or an order addressed to him as a witness and against the involuntary production of documentary evidence, which might be used as incriminating evidence.  *S. v. Pence,* 25 L. R. A. (N. S.), 818 and note.  If the proposed evidence is procured by such compulsion as is inconsistent with the exercise of volition it falls within the privilege and should not be admitted.  *S. v. Turner,* 136 A. S. R. (Okla.), 129 and note.  Very pertinent is the language used in *Gillespie v. State,* 35 L. R. A. (N. S.) (Okla.), 1171: "Section 21 of Art. II of the Constitution of this State provides that no one shall be compelled to give evidence which would tend to incriminate him.  This is not merely a formal technical rule, which may be enforced or dispensed with at the discretion of the courts. It is a mandatory, constitutional provision, securing to every defendant a valuable and substantial right.  If a county attorney can, in the presence of the jury, demand of the defendant, or his counsel, the production of any letters or papers which may be proven to be in the possession of the defendant, of what value is this constitutional provision? It is true that making a demand upon a defendant to produce such letters or papers is a different thing from forcing him to produce them; but the effect is the same, because if a defendant refuses to comply with such a demand it is equivalent to admitting that the evidence demanded would incriminate him, if it were produced.  The observation and experience of all practicing attorneys will sustain the statement that such an inference is more damaging to a defendant than a proven fact would be.  When such a demand is made, a defendant must accept the alternative of either producing the letters, and thereby incriminate himself, or of having the jury place the strongest possible construction against him upon his failure to do so.  If this can be done, the very life, body, and soul of the Constitution would be violated and trampled upon."

The same conclusion was announced as to the Fifth Amendment to the Federal Constitution in *McKnight v. U. S.,* 115 Fed., 972: "A perusal of the decisions of the Supreme Court shows that no constitutional right has been the subject of more jealous care than that which protects one accused of crime from being compelled to give testimony against himself.  The right to such protection existed at the common law, and was carried into the Constitution, that the citizen might be forever protected from inquisitorial proceedings compelling him to bear testimony against himself of acts which might subject him to punishment.  In the present case the accused, in the presence of the jury, was, by direction of the court, called upon to produce the document which it was alleged contained the corrupt agreement which was the basis of the note given by irresponsible persons for the funds of the bank by McKnight's direction.  The production of such a paper would have been

self-criminating to the defendant in the highest degree. It is true, the learned judge made no order requiring its production; but the accused, by the demand made upon him before the jury, after proof tending to show his possession of the document, was required either to produce it, deny or explain his want of possession of the writing, or by his very silence permit inferences to be drawn against him quite as prejudicial as positive testimony would be. Nor were the jury advised that the nonproduction of the writing afforded no ground for an inference of guilt. We think this procedure was an infraction of the constitutional rights of the accused, within the meaning of the Fifth Amendment to the Constitution."

Our own decisions are in accord with this principle. In *S. v. Jacobs,* 50 N. C., 259, it is said, "Nothing is better settled than that a defendant in a criminal charge cannot be compelled to produce a private paper which would be evidence against him on the trial. *Rex v. Worsenham,* 1 Ld. Raym. Rep., 705; *Rex v. Mead,* 2 Ld. Raym. Rep., 927; *Rex v. Shelly,* 3 Term R., 142. Courts of law would not compel a party to produce a deed or other private paper, even in a civil case, where it was intended to be used as evidence against him; *Huldane v. Harvey,* 4 Burr. Rep., 2489. So strong was this rule, and so much did it interfere with the ascertainment of the truth in trials at law, that our Legislature, in the year 1821, passed an act empowering the courts of law to require the parties under, certain circumstances, to produce books and papers in their possession, or power, which might contain evidence pertinent to the issue on the trial (see Rev. Code, ch. 31, sec. 82). This act does not extend to criminal prosecutions, and as to them, therefore, the law remains as it was before." It is not difficult to distinguish between the case just cited and *S. v. Johnson,* 67 N. C., 55; *S. v. Woodruff, ibid.,* 89; *S. v. Garrett,* 71 N. C., 85; *S. v. Graham,* 74 N. C., 646.

The State gave notice to the defendant to produce the papers therein described. In the brief for the State it is suggested that as the notice involved no compulsion the defendant should have refused to produce the papers on the ground that they would incriminate him; also that a mere objection to the evidence was not sufficient to raise the constitutional issue. *S. v. Mitchell,* 119 N. C., 784; *S. v. Morgan,* 133 N. C., 743; *Ivey v. Cotton Mills,* 143 N. C., 189. The defendant did object for the reason that the evidence would incriminate him. But he had the papers in his possession and his refusal to respect the order of the court would have invited the usual consequences of wilful disobedience. The circumstances exclude the idea of volition; on the contrary the order to produce the papers imported compulsion. He did all he could have done: he "protested" against being compelled to produce the papers

because of their incriminating character and excepted to the order compelling their production.

The reason for requiring notice is to enable the defendant to produce the document if he desires to do so, or if it be lost to have witnesses to meet such proof of its contents as may be offered by the adverse party. Whenever it becomes necessary in a criminal action to serve notice on the defendant to produce at the trial any paper, book or document in his possession to be used as evidence against him, he should be given an opportunity in the absence of the jury to bring it forward or to decline to do so; and if he refuse to produce it for the reason that it might tend to convict him, secondary evidence may then be offered. *Nalley v. State,* 74 S. E. (Ga.), 567; *Sellers v. State,* 78 S. E. (Ga.), 196; *Thomas v. State,* 91 S. E. (Ga.), 247; *Skidmore v. State,* 26 L. R. A. (N. S.) (Tex.), 466; *Knights v. State,* 76 A. S. R. (Neb.), 78.

The defendant is entitled to a

New trial.