STATE OF NORTH CAROLINA v. DENNIS McDANIEL

No. 657

(Filed 11 December 1968)

**1. Criminal Law § 84— in-court admission which is "fruit" of erroneously admitted evidence**

While the "poison tree" doctrine applies to an in-court admission found to be "fruit" of unconstitutionally obtained and erroneously admitted evidence, the State is not barred from claiming the normal consequences of defendant's in-court admission if, as a matter of good sense, the connection between defendant's testimony and the erroneously admitted evidence is so "attenuated as to dissipate the taint."

**2. Constitutional Law § 33— right against self-incrimination**

A defendant has a right under both the State and Federal Constitutions not to be compelled in any criminal case to be a witness against himself. Amendments V and XIV, U. S. Constitution; Article I, § 11, N. C. Constitution.

**3. Criminal Law §§ 75, 84, 169— error in admitting evidence cured by defendant's testimony — in-court admission induced by erroneously admitted evidence**

Where properly admitted evidence of the State was sufficient to permit the jury to find defendant guilty of murder by stabbing deceased with a

knife, error in the admission, over defendant's objection, of (1) a hearsay statement by deceased that it was defendant who cut him, (2) an unconstitutionally obtained in-custody statement by defendant that he intentionally stabbed deceased, and (3) the knife allegedly used in the crime which was found as a result of the in-custody interrogation *is held* cured when defendant testified in his own behalf, in attempting to establish self-defense, that he intentionally stabbed deceased with the knife, defendant's testimony being induced not by the introduction of the erroneously admitted evidence but by the strength of the State's competent evidence. *Harrison v. United States*, 392 U.S. 219, distinguished.

BOBBITT, J., dissenting.

SHARP, J., joins in dissenting opinion.

APPEAL by defendant from *Bailey, J.,* at the January 1967 Criminal Session of COLUMBUS.

Upon an indictment, proper in form, the defendant was tried for the murder of Chester Leggett, found guilty of murder in the second degree, and sentenced to imprisonment in the State Prison for a term of twenty to thirty years. He appealed, assigning as error the denial of his motion for a directed verdict of not guilty and the admission, over his objection, of certain evidence. This Court affirmed, holding there was no error in the denial of the motion for a directed verdict of not guilty and, while there were errors in the admission of certain evidence introduced by the State, they were cured by the defendant's own testimony establishing the same facts. *State v. McDaniel*, 272 N.C. 556, 158 S.E. 2d 874.

The defendant petitioned the Supreme Court of the United States for a writ of certiorari. Thereafter, that Court rendered its decision in *Harrison v. United States*, 392 U.S. 219, 88 S. Ct. 2008, 20 L. Ed. 2d 1047. One week later, it granted the petition of this defendant for a writ of certiorari, vacated the judgment of this Court, and remanded the cause to this Court for further consideration in the light of the *Harrison* case. Justices Black, Harlan and White dissented. The order of remand states:

"THE CAUSE IS REMANDED to you in order that such proceedings may be had in the said cause, in conformity with the judgment of this Court above stated, as accord with right and justice, and the Constitution and laws of the United States, the said writ notwithstanding."

Pursuant to the judgment and remand by the Supreme Court of the United States, the case was restored to the docket of this Court for further argument. John A. Dwyer, court appointed counsel, who

had represented the defendant at his trial in the superior court, in the hearing of the appeal in this Court and in the Supreme Court of the United States, having died, the present counsel for the defendant was appointed. He filed a new brief and presented the argument for the defendant at the further hearing in this Court.

*Attorney General Bruton, Deputy Attorney General Bullock and Assistant Attorney General Goodwyn for the State.*

*Williamson & Walton for defendant appellant.*

LAKE, J.

In our former opinion in this case, 272 N.C. 556, 158 S.E. 2d 874, we held:

> 1. It was error to admit, over objection, a statement by the deceased, not made in the presence of the defendant and not qualifying as a dying declaration, that it was the defendant who had cut him;

> 2. It was error to admit, over objection, statements made to a police officer by the defendant, while in custody, to the effect that he had intentionally cut the deceased with a knife, because the procedure required by former decisions of this Court (see *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1) for determining the competency of such statements was not followed;

> 3. It was error to admit in evidence, over objection, the knife which the State contends the defendant used to stab the deceased, the knife having been found by a police officer as a result of an interrogation of the defendant while in custody, there being no showing that he was warned of his constitutional rights as specified in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and, for the same reason, it was error to admit the testimony of the officer relating to the finding of the knife; but

> 4. These errors were cured and rendered harmless by the fact that the defendant, himself, took the stand and testified that he did intentionally stab the deceased, that he did so with the knife in question, that he subsequently placed the knife where it was found by the officer and that he told the interrogating officer where to find the knife, and, therefore, these errors of the trial court do not entitle the defendant to a new trial.

We adhere to these rulings insofar as the law of North Carolina, separate and apart from the Constitution of the United States as interpreted by the Supreme Court of the United States, is concerned.

*Harrison v. United States,* 392 U.S. 219, 88 S. Ct. 2008, 20 L. Ed. 2d 1047, was decided after our former opinion in this case was issued. As required by the mandate of the Supreme Court of the United States, we now come to consideration of the effect, if any, of the rule announced by that Court in *Harrison v. United States* upon the present case. This requires an analysis of the *Harrison* case and a comparison of this case with it.

The *Harrison* case was before the Supreme Court of the United States as the result of Harrison's third trial in the courts of the District of Columbia upon the charge of murder. In each of the three trials, the jury found the defendant guilty and judgment was entered upon the verdict in the federal trial court. The first conviction was vacated by the Court of Appeals on grounds not involved in the opinion of the Supreme Court.

At Harrison's second trial the Government introduced confessions made by him, without which it did not have evidence sufficient to identify him as the killer. See the opinion of the Court of Appeals, 359 F. 2d 214. The substance of the confessions was that Harrison and two others, armed with a shotgun, had gone to the house of the deceased intending to rob him and the deceased had been killed while resisting their entry into his home. Harrison then took the stand in his own behalf and testified that he and his companions had gone to the home of the victim for the purpose of pawning the shotgun and the victim had been killed accidentally while Harrison was presenting the gun to him for inspection. Harrison's conviction at the second trial was vacated by the Court of Appeals (359 F. 2d 214) on the ground that the confessions had been obtained in violation of his rights, as declared in *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479, and in *Harling v. United States,* 295 F. 2d 161. In a footnote to the decision of the Supreme Court (in its review of the third trial), it stated that it was then proceeding upon the assumption that the Court of Appeals was correct in ruling that the confessions were inadmissible, but that it was intimating no view of its own upon that question.

It will be noted that in his testimony at the second trial Harrison did not corroborate the erroneously admitted confessions. His testimony merely placed him at the scene of the killing with the gun in his hand prior to its discharge. It contradicted the most damaging part of the confessions in that it denied any felonious intent or act.

Consequently, the rule relied upon by us in our former opinion in the present case would not apply to the *Harrison* case and the error, if any, in admitting the confessions of Harrison was not cured by his subsequent testimony. Under our rule, Harrison would have been granted a new trial following his second conviction, assuming the confessions were erroneously admitted.

When Harrison was brought to trial for the third time, six years after the first trial, "prosecution witnesses were dead or unavailable." See dissenting opinion of Mr. Justice White. At the third trial, the prosecution did not offer the confessions in evidence, but, over objection, read to the jury Harrison's testimony at the second trial, thus placing him, by this testimony, at the scene of the killing with the shotgun in his hand immediately prior to the killing. The ground of Harrison's objection, stated to the trial court, was that the defendant "had been induced to testify at the former trial only because of the introduction against him of the inadmissible confessions." Harrison did not testify at the third trial. Without the introduction of the transcript of his testimony at the second trial the Government's evidence would not have been sufficient to convict him. The Court of Appeals affirmed the conviction at the third trial. 387 F. 2d 203.

Thus, the question for the Supreme Court of the United States, upon its review of the third conviction of Harrison, was this: Where a defendant, by the prosecution's introduction in evidence of unlawfully obtained confessions, has been "induced" at a former trial to testify, may his testimony, so induced, be admitted in evidence against him at a retrial on the same charge over his objection upon the ground that it was so induced? The Supreme Court of the United States held that under those circumstances such testimony may not be introduced against the defendant. That decision is, of course, binding upon us. The Court, however, did not have before it in the *Harrison* case the question with which we are confronted, which is this: Where an admission, unconstitutionally obtained, is introduced in evidence over the defendant's objection, is the error cured when the defendant then takes the stand in his own behalf at the same trial and testifies to precisely the same facts, the State having introduced ample evidence, apart from that so erroneously admitted, to carry the question of the defendant's guilt to the jury?

In reaching the decision in the *Harrison* case, the majority of the Supreme Court of the United States said:

> "A defendant who chooses to testify waives his privilege against compulsory self-incrimination *with respect to the testi-*

*mony he gives,* and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place *only by reason of the strength of the lawful evidence adduced against him.* [Emphasis added.]

"Here, however, the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby — the fruit of the poisonous tree, to invoke a time-worn metaphor. * * *

"The question is not *whether* the petitioner made a knowing decision to testify, but *why.* If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible. * * *

"The remaining question is whether the petitioner's trial testimony was in fact impelled by the prosecution's wrongful use of his illegally obtained confessions. It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would have testified as he did even if his inadmissible confessions had not been used. * * * Having 'released the spring' by using the petitioner's unlawfully obtained confession against him, the Government must show that its illegal action did not induce his testimony.

"No such showing has been made here. *In his opening statement to the jury, defense counsel announced that the petitioner would not testify in his own behalf.* Only after his confessions had been admitted in evidence did he take the stand. It thus appears that, but for the use of his confessions, the petitioner might not have testified at all. But even if the petitioner would have decided to testify whether or not his confessions had been used, it does not follow that he would have admitted being at the scene of the crime and holding the gun when the fatal shot was fired. On the contrary, the more natural inference is that no testimonial admission so damaging would have been made if the prosecutor had not already spread the petitioner's confessions before the jury. That is an inference the Government has not dispelled. [Emphasis added.]

"It has not been demonstrated, therefore, that the petitioner's testimony was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint.' "

[3] We now turn, for comparison, to the record in the case before us. It was stipulated at the trial that the cause of Leggett's death was a stab wound in the chest. Prior to the introduction of the erroneously admitted evidence, the State had offered, without objection, clearly competent evidence, not contradicted, that approximately one hour before Leggett was found in a dying condition with three stab wounds in his chest and shoulder, the defendant and Leggett had a fight, that when he went into the fight the defendant had a knife in his hand, that Leggett retreated until he was backed up against a fence, that while Leggett was in that position the defendant advanced on him and the defendant's right arm went up three times, whereupon Leggett first fell back against the fence and then ran from the scene and that Leggett was found, dying, a block and a half from the scene of the fight.

Clearly, the properly admitted evidence of the State was sufficient to permit the jury to find the defendant guilty of murder; that is, that he killed Leggett by intentionally stabbing him with a knife after Leggett had withdrawn from the fight and was trying to flee. The purpose of the defendant's testimony was not to deny that he stabbed Leggett, that he stabbed him intentionally, or that he stabbed him with the knife erroneously placed in evidence by the State. On the contrary, he testified that he did so stab Leggett with that knife. The whole purpose of his testimony was to establish that the stabbing was justified because it was done in self defense. It is unrealistic to suppose that, confronted with the competent evidence introduced by the State, he would not have sought to establish this defense had the State not introduced any of the erroneously admitted evidence.

At no time during the trial did the defendant, or his trial counsel, intimate that he did not intend to take the witness stand in his own behalf or that he would deny that he stabbed the deceased. At no time in the trial court did the defendant, or his trial counsel, suggest that his testimony was "impelled" by the introduction of the erroneously admitted evidence. The defendant was represented by his trial counsel when the case was first argued in this Court. Neither in his brief nor in his oral argument was there the slightest suggestion that the defendant's testimony at the trial was "impelled" or induced by the improperly admitted evidence. His contention at

that time was that no error committed by the admission of the unconstitutionally obtained evidence could be cured by a defendant's testifying to the same facts.

The record before us does not include the petition for certiorari filed in the Supreme Court of the United States on behalf of the defendant by his trial counsel, or his brief in support thereof. There is nothing before us to indicate that even there his trial counsel contended that he was "impelled" by the erroneously admitted evidence to put his client on the witness stand. Of course, he was "impelled" to do so by the strength of the State's case, but that case included ample evidence of intentional killing with a knife, which was clearly competent and which was introduced without objection.

Upon the reargument of this case before us, following the remand by the Supreme Court of the United States, the defendant was represented by his newly appointed counsel, his trial counsel having died. Quite properly, in view of the remand order, his present counsel contended on the reargument that his client's testimony at the trial was "impelled" by the evidence erroneously admitted or, at least, the State could not prove the contrary.

It is obviously impossible for the State now to offer evidence to show what motivated the defendant's testimony at his trial. Even if evidence on that question could now be taken, the defendant could not now be compelled to answer questions on that subject. Neither could his trial counsel be so compelled, if he were still living. We must determine whether the defendant's own testimony was the fruit of poison or was an antidote thereto from consideration of the record before us, including the absence therefrom of any contention by the defendant, or his trial counsel, prior to the remand order, that his testimony was impelled by the trial judge's error.

The doctrine of the "poisonous tree" originated as an application of the constitutional protection against unreasonable searches and seizures. In *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A.L.R. 1426, the Court, speaking through Mr. Justice Holmes, held that photographed copies made by the Government of books it had unconstitutionally seized could not be placed in evidence by it against the owner of the books, saying:

> "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus

obtained became sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

In *Nardone v. United States,* 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307, the Court, speaking through Mr. Justice Frankfurter, held inadmissible evidence obtained by unconstitutional wire tapping, but said:

"Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint.".

In *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441, the doctrine was applied to exclude, as fruit of an unlawful search, a statement made and conditions observed as a result of such search and so as to exclude articles obtained through "exploitation" of such statement. Speaking through Mr. Justice Brennan, the Court said:

"Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion.   *   *   *

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

In *Fahy v. Connecticut,* 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171, the Court held that a defendant, whose confession is offered in evidence by the State, must be given an opportunity to show it was induced by his being confronted with unconstitutionally seized evidence.

[1]    In the *Harrison* case, the Court has applied the "poison tree" doctrine to an in-court admission found to be "fruit" of an unconstitutionally obtained and erroneously admitted out-of-court confession. But the Court has not, in the *Harrison* case, departed from

the limitations placed upon the doctrine in the *Silverthorne, Nardone* and *Wong Sun* cases. The State is not barred from claiming the normal consequences of the defendant's in-court testimony if, "as a matter of good sense," the connection between it and the erroneously admitted evidence is so "attenuated as to dissipate the taint."

[2]    Here, there was no unlawful search or seizure. The constitutional right upon which the defendant relies is the right, conferred upon him by the Constitution of the United States, Amendments V and XIV (see *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653), not to be "compelled in any criminal case to be a witness against himself." That right is also firmly established in this State by Art. I, § 11, of the Constitution of North Carolina, and has repeatedly been recognized and proclaimed by the decisions of this Court. *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2 1104; *State v. Hollingsworth,* 191 N.C. 595, 132 S.E. 667; *State v. Medley,* 178 N.C. 710, 100 S.E. 591; *Smith v. Smith,* 116 N.C. 386, 21 S.E. 196; *LaFontaine v. Southern Underwriters,* 83 N.C. 133. Harrison, at all phases of his third trial and the review thereof, contended that he was so compelled at his second trial and because of that compulsion his statements thereat, like his custodial confession, could not be used against him on his third trial. The record in the *Harrison* case lent support to that contention. The record in the present case does not.

[3]    The distinctions between this case and the *Harrison* case are these:

   1.   In the *Harrison* case, the prosecution offered the defendant's in-court statements, made at a former trial, as part of its case in chief at the retrial. Here, the defendant's testimony was introduced in the same trial by the defendant and the question is as to its efficacy as a cure of error in admitting evidence of the State identical in nature.

   2.   In the *Harrison* case, at the time the in-court statement of the defendant at the former trial was offered in evidence against him, the defendant objected on the ground that it was fruit of a poisonous tree; that is, it was, itself, coerced and, therefore, incompetent. Here, no such contention was made, either in the trial court or in this Court, until after the remand of the case to us by the Supreme Court of the United States.

   3.   In the *Harrison* case, it affirmatively appears from the record that, at the start of the second trial, at which the defendant's in-court statement was made, the defendant announced he would not take the stand in his own behalf, and after the illegally obtained

out-of-court confessions were introduced by the prosecution, he changed his course at that trial and took the stand to give the testimony which was used against him at the subsequent trial. Thus, the record there affirmatively showed the defendant was compelled by the prosecution's use of the illegally obtained confessions to make the in-court statement, used at the third trial, and so showed the statement was "fruit" of the illegally obtained confessions. Here, there is nothing in the record to indicate any change in the defendant's trial strategy as the result of the error of the trial court.

4. In the *Harrison* case, the Government's evidence at the second trial, apart from the erroneously admitted confessions, was not sufficient to sustain a conviction, so clearly it was the admission in evidence of the confessions which "impelled" Harrison to testify. Here, the State's competent evidence was ample to support a conviction and thus to "impel" this defendant to testify as he did, even had the erroneously admitted evidence not been offered.

The coercive effect of unconstitutionally obtained evidence is not, per se, greater than the coercive effect of like evidence incompetent for any other reason. To hold that a defendant in a criminal action, once evidence has been erroneously admitted over his objection, may then take the stand, testify to exactly the same facts shown by the erroneously admitted evidence, and from that point embark upon whatever testimonial excursion he may choose to offer as justification for his conduct, without thereby curing the earlier error, gives to the defendant an advantage not contemplated by the constitutional provisions forbidding the State to compel him to testify against himself. If the jury believes his evidence in justification of his conduct, he will be acquitted and can never be tried again. If the jury does not believe him and finds him guilty of the offense, he gets a new trial because of the court's error. We think such result is not required by the Constitution of the United States, as interpreted in the *Harrison* case, under the circumstances disclosed by this record. Here, in view of the strength of the State's competent evidence and of the failure of the defendant and his trial counsel, prior to the remand to us, to claim that his in-court testimony was compelled or impelled by the trial court's errors, we think that to deny the curative effect of his testimony would push the doctrine of the poisonous tree to "a drily logical extreme" not in accord with common experience in the courtroom.

We, therefore, adhere to our previously expressed view that the defendant's own testimony cured the errors of the trial judge and rendered them harmless.

No error.

BOBBITT, J., dissenting:

At Fall Term 1967, I concurred in *the result,* "No Error," of the Court's decision. *State v. McDaniel,* 272 N.C. 556, 158 S.E. 2d 874.

Officer Heye testified defendant, although not interrogated, persisted in telling what had happened; and that under these circumstances, defendant told him he had cut Leggett with a knife and meant to do it, intending thereby to put a stop to Leggett's "picking and staying in behind him all the time." This volunteered testimony, in my opinion, was competent; and, in view of its probative force, I did not consider the other challenged rulings on evidence, if erroneous, of such prejudicial significance as to justify awarding a new trial. However, the Court decided Heye's testimony was incompetent.

Further consideration in the light of *Harrison v. United States,* 392 U.S. 219, 88 S. Ct. 2008, 20 L. ed. 2d 1047, must proceed upon the basis that the incompetency of Heye's said testimony is the established law of this case. When so considered, it is my opinion that the prejudicial impact of Heye's testimony, particularly the portion thereof in which he stated defendant had told him he had cut Leggett with a knife and meant to do it, intending thereby to put a stop to Leggett's "picking and staying in behind him all the time," was of such adverse probative force as to constitute a material factor in determining whether it was advisable for the defendant to take the witness stand and testify in his own behalf. The thrust of this evidence contradicts the view that defendant was acting in self-defense.

Accepting the Court's prior determination that Heye's testimony was erroneously admitted as the law of this case, it is my opinion that, under authority of *Harrison,* defendant should be awarded a new trial.

SHARP, J., joins in dissenting opinion.