STATE OF NORTH CAROLINA v. ELSIE JUANITA NORRIS

No. 106

(Filed 8 July 1981)

**1. Homicide § 9— law of perfect self-defense**

The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed: (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; (3) defendant was not the aggressor in bringing on the affray; and (4) defendant did not use excessive force.

**2. Homicide § 9— imperfect right of self-defense**

If defendant believed it was necessary to kill the deceased in order to save herself from death or great bodily harm, and if defendant's belief was reasonable in that the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but defendant, although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant has only the imperfect right of self-defense and is guilty at least of voluntary manslaughter.

**3. Homicide §§ 4, 9— meaning of "without justification or excuse"**

"Without justification or excuse" as an element of murder in the first or second degree means the absence of either of the first two elements of self-

defense, *i.e.*, the defendant did not believe it was necessary to kill the victim in order to save herself from death or great bodily harm; or, if she did believe this, her belief under the circumstances as they appeared to her at that time was unreasonable.

**4. Homicide § 28— self-defense—erroneous use of "without justification or excuse"**

   The trial court in a homicide prosecution erred in using the expression "without justification or excuse" as the equivalent of "self-defense" throughout the charge, not only with respect to murder in the first degree but also murder in the second degree and voluntary manslaughter, since the instructions seemingly require the jury to find the existence of all four elements going to make up defendant's *perfect* right of self-defense before she could derive any benefit whatsoever from the principles of self-defense and erroneously deprived defendant of the benefits flowing from her *imperfect* right of self-defense should the jury find that (1) it appeared to her and she believed it was necessary to kill the deceased in order to save herself from death or great bodily harm; and (2) her belief was reasonable because the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; but (3) without the intent to kill deceased or inflict serious bodily harm upon him, she commenced the quarrel and was the aggressor; or (4) she used more force than was necessary or reasonably appeared to her to be necessary under the circumstances to protect herself from death or great bodily harm.

APPEAL by defendant from *Kirby, J.*, at the 29 September 1980 Regular Criminal Session, BUNCOMBE Superior Court.

Defendant was indicted and tried for the murder of her husband and for a felonious assault on her husband's girlfriend. The jury found defendant guilty of the first degree murder of her husband and not guilty of the assault. Upon recommendation of the jury, a life sentence was imposed for the murder. Defendant appealed to this Court.

The State's evidence tends to show the following:

On 20 January 1980 the deceased Donald Norris was married to defendant but was living with Bernice Owens. About 8 o'clock that night, defendant went to the trailer where her husband and Bernice Owens were living, knocked and tried to enter but was unable to do so. She left, came back in a few minutes and knocked again. She did this all night.

At 6 o'clock the next morning, Donald Norris opened the door to see if defendant had gone. She was still there. About 6:30, he went out because his ride to work was coming up the drive.

He carried a coat with him but had no lunch pail and no weapon. Defendant shot Donald Norris four times. His body was within a foot or two of defendant's car. Bernice Owens went outside her trailer and defendant began beating her with the gun. Owens fought with defendant, finally knocked her down and ran for help.

Defendant's evidence tends to show the following:

She was forty-five years of age and a native of Georgia. She had lived there and had six children by a previous marriage. At time of trial she had six grandchildren. She had a good reputation in her community.

After her first marriage ended, she met and married Donald Norris on 14 June 1978 in Statesboro, Georgia. At that time, he was a master sergeant in the U.S. Marine Corps. She sold her property in Georgia and they moved to North Carolina. The marriage was peaceful for about two weeks, and then Donald Norris began a series of threats, assaults and beatings which lasted intermittently until the day of his death. Her husband was a heavy drinker. On one occasion in August 1979 she shot and wounded him in her own self-defense. After a separation agreement was signed, they resumed living together until 22 December 1979 when Donald went to live with Bernice Owens in her trailer.

By 21 January 1980, defendant was out of money. She tried, unsuccessfully, to see her husband at work. On the evening of 20 January she went to the Bernice Owens trailer where he was living but got no response. She decided to get up early the next morning and see him before he left for work. She drove to the trailer about 5:30 a.m. As he came out to catch his ride for work, she got out of her car, met him on the passenger side and said she wanted to talk to him. He cursed her, threatened her and struck her in the nose with his fists, breaking her nose and knocking her to the ground. A medical examination verified that her nose was broken. Defendant got up and saw Bernice Owens come out of her trailer. Defendant had a pistol on the passenger side of her car which she reached in and got as Donald was coming at her. Defendant was afraid of him and felt that if he and Bernice Owens got to her that she didn't have a chance. She was afraid her husband would kill her. For that reason, she shot him.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Herbert L. Hyde, Attorney for defendant appellant.*

HUSKINS, Justice.

Defendant has posed numerous questions for review. We find it necessary to address only one of them, viz: Whether the trial court erred in its charge on self-defense. We conclude there was error in this respect which entitles defendant to a new trial.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17; *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129 (1971).

Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963).

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Benge,* 272 N.C. 261, 158 S.E. 2d 70 (1967). For example, a killing by reason of anger suddenly aroused by provocation which the law deems adequate to dethrone reason temporarily and thus to displace malice is voluntary manslaughter. Likewise, a killing resulting from the use of excessive force in the exercise of the right of self-defense is manslaughter. *See State v. Woods,* 278 N.C. 210, 179 S.E. 2d 358 (1971); *State v. Marshall,* 208 N.C. 127, 179 S.E. 427 (1935); *State v. Merrick,* 171 N.C. 788, 88 S.E. 501 (1916); *State v. Baldwin,* 152 N.C. 822, 68 S.E. 148 (1910).

Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury. *State v. Foust,* supra. Stated somewhat differently, involuntary manslaughter is the unintentional killing of a human being without malice by (1) some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) an act or omission constituting culpable negligence. *State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485 (1959); *State v. Satterfield,* 198 N.C. 682, 153 S.E. 155 (1930).

[1]   The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978); *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974); *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971); *State v. Woods*, 278 N.C. 210, 179 S.E. 2d 358 (1971); *State v. Ellerbe*, 223 N.C. 770, 28 S.E. 2d 519 (1944). The existence of these four elements gives the defendant a *perfect right of self-defense* and requires a verdict of not guilty, not only as to the charge of murder in the first degree but as to all lesser included offenses as well.

[2]   On the other hand, if defendant believed it was necessary to kill the deceased in order to save herself from death or great bodily harm, and if defendant's belief was reasonable in that the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but defendant, although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the *imperfect right of self-defense*, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter. *State v. Potter*, supra; *State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975); *State v. Crisp*, 170 N.C. 785, 87 S.E. 511 (1916).

In the case now before us the able trial judge instructed the jury it could find defendant guilty of murder in the first degree, guilty of murder in the second degree, guilty of voluntary manslaughter or not guilty. He told the jury that a separate sentencing proceeding would be conducted in the event defendant was found guilty of first degree murder. He summarized the evidence briefly and then defined in detail each degree of homicide and the elements thereof. He told the jury that in order to convict defendant of first degree murder, the State must prove beyond a reasonable doubt, among other things, that defendant intentionally and without justification or excuse, and with malice, shot Donald Norris with a deadly weapon. He then defined the term "without justification or excuse" as follows:

> Members of the jury, when I say without justification or excuse, I have reference to self-defense which will be fully explained hereafter.

While the quotation appears in that part of the charge dealing with the various elements of murder in the first degree, the expression "without justification or excuse" was used as the equivalent of "self-defense" throughout the charge, not only with respect to murder in the first degree but also murder in the second degree and voluntary manslaughter. We hold this error requiring a new trial.

[3] In our view, "without justification or excuse" as an element of murder in the first or second degree means the absence of either of the first two elements of self-defense, *i.e.*, the defendant did not believe it was necessary to kill the victim in order to save herself from death or great bodily harm; or, if she did believe this, her belief under the circumstances as they appeared to her at that time was unreasonable. *State v. Potter*, supra; *State v. Baldwin*, 152 N.C. 822, 68 S.E. 148 (1910).

[4] The instruction as given here seemingly required the jury to find the existence of all four elements going to make up defendant's *perfect* right of self-defense before she could derive any benefit whatsoever from the principles of self-defense. This was error because it deprived defendant of the benefits flowing from her *imperfect* right of self-defense should the jury find that (1) it appeared to her and she believed it was necessary to kill the deceased in order to save herself from death or great bodily

harm; and (2) her belief was reasonable because the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; *but* (3) without the intent to kill Donald Norris or inflict serious bodily harm upon him, she commenced the quarrel and was the aggressor; or (4) she used more force than was necessary or reasonably appeared to her to be necessary under the circumstances to protect herself from death or great bodily harm. Should the jury make these findings, she would be guilty of voluntary manslaughter only.

Where the issue in a homicide case narrows to the exercise of either the perfect or imperfect right of self-defense, as the jury may find, the question for the jury is not limited to whether defendant is guilty of first degree murder or not guilty by reason of self-defense. When the defendant has exercised the imperfect right of self-defense, the homicide is reduced from murder to manslaughter. The doctrine and consequences of imperfect self-defense are adequately stated in *State v. Crisp*, 170 N.C. 785, 793, 87 S.E. 511, 515 (1916), as follows:

> '[I]f one takes life, though in defense of his own life, in a quarrel which he himself has commenced with intent to take life or inflict serious bodily harm, the jeopardy in which he has been placed by the act of his adversary constitutes no defense whatever, but he is guilty of murder. But, if he commenced the quarrel with no intent to take life or inflict grievous bodily harm, then he is not acquitted of all responsibility for the affray which arose from his own act, but his offense is reduced from murder to manslaughter.'

*See also State v. Wetmore*, 298 N.C. 743, 259 S.E. 2d 870 (1979).

We forego discussion of the other assignments, most of which are addressed to the charge, since they are not likely to arise on retrial. Because the error in the charge on self-defense may have caused the jury to convict defendant of murder instead of voluntary manslaughter, there must be a new trial.

For the reasons stated, the judgment is vacated and the case remanded to the Superior Court of Buncombe County for a new trial in accord with this opinion.

New trial.