STATE OF NORTH CAROLINA v. TERRY FRANKLIN COOKE, SR.

No. 20A82

(Filed 2 June 1982)

1. Homicide § 20.1— admissibility of photographs

A photograph was properly admitted in a homicide prosecution for the purpose of illustrating the testimony of a witness concerning the place where the crime occurred, the place to which the victim ran after he was stabbed by defendant, where the victim was when he died, and the substantial amount of blood on the ground.

2. Homicide § 19.1— reputation of deceased—no knowledge by defendant

The trial court did not err in refusing to permit defense counsel to cross-examine a State's witness concerning a murder victim's reputation for being a violent and dangerous person where the record shows that defendant did not know the victim prior to the altercation in question and had no knowledge of the victim's reputation.

3. Homicide § 21.7— second degree murder—sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution for second degree murder where it tended to show that a car driven by defendant and a car in which the victim was a passenger almost collided; defendant stuck a Buck knife through the window of the car in which the victim was riding and waved it back and forth; the victim jumped out of the car, defendant swung the knife back and forth at the victim, and defendant and the victim had a fight for some 5-10 minutes; during that time the victim attempted to hit defendant and attempted to kick defendant's hand that was holding the knife; when a third person attempted to separate them, defendant attempted to

shake hands with the victim but held the knife in his hand while talking to the victim and eventually the victim went toward defendant at which time defendant struck the victim in his chest with the knife.

**4. Homicide § 28.3— instructions—imperfect right of self-defense**

The trial court in a second degree murder prosecution sufficiently charged the jury on defendant's imperfect right of self-defense.

APPEAL by defendant from *Helms, Judge,* 21 September 1981 Criminal Session FORSYTH Superior Court.

Upon a plea of not guilty defendant was tried on a bill of indictment charging him with the murder of Joseph John Willie Young. The state sought a verdict no greater than murder in the second-degree.

Evidence presented by the state is summarized as follows:

At about 6:00 p.m. on 16 June 1981 Joe Young was riding with Robert Devose on Spring Street in the City of Winston-Salem. As they were proceeding on said street, a Toyota automobile drove into the street in front of them from a driveway. Devose had to turn to the left to keep from striking the Toyota; and when he drove to the left, his car was in such a position that he could not move it as the Toyota was right behind him.

Defendant, who was driving the Toyota, got out of his car, pulled out a Buck knife and went to the passenger side of the car in which Young was sitting. Defendant stuck the knife in the car and waived it back and forth to such an extent that Young had to lean back to avoid the knife. A few moments later Young jumped out of the car; he had no weapon. Defendant then swung the knife back and forth at Young and they had a fight for some 5-10 minutes. During that time Young attempted to hit defendant and attempted to kick defendant's hand that was holding the knife. At some point while the two men were engaged in their altercation, a third individual came up with a long stick and attempted to separate them. Thereupon defendant attempted to shake hands with Young but held the knife in his hand while talking to Young. Eventually Young went toward defendant at which time defendant struck Young in his chest with the knife. Young turned, ran a short distance and fell on the sidewalk. He was later taken to a

hospital and died that evening at around 8:00 p.m. from a three inch knife wound in his heart.

Evidence presented by defendant is summarized as follows:

On the afternoon and evening in question, defendant had been practicing music with a band that he played with. He had been drinking on that afternoon and was in an intoxicated state. He went to Doug Reed's house, which is located on Spring Street, and visited there for some period of time.

Later he got back into his automobile with his girlfriend and another man. As he was backing out of Reed's driveway he heard another car slam on brakes. He then heard someone holler "watch where you're going you damn honky."

After both cars stopped, Devose, the driver of the other car, got out and started walking toward defendant. A little later Young got out of the car and at that time defendant became scared and pulled his knife because both of the men were advancing on him. Defendant asked Young to shake hands with him and "just forget it." Young refused to shake hands, saying "I'm not shaking no g.d. honky's hand."

A Mr. James came up and tried to separate defendant and Young as they were standing near the cars. Defendant renewed his efforts to get Young to shake hands with him but Young refused. After Mr. James separated the two men, Young advanced on defendant and kicked him in his groin. Defendant bent over and "sort of" blacked out. He saw Young advancing on him again but he did not remember what happened after that.

Defendant surrendered himself to law enforcement officers sometime later that night and asked the officers to take him to the hospital as he had been injured when he was kicked. Young was a large, strong man, approximately 5 ft. 11 in. tall and weighed approximately 185 pounds. Defendant weighed considerably less than Young. Defendant had been convicted previously of breaking or entering and carrying a concealed weapon.

The court submitted the case to the jury on second-degree murder, voluntary manslaughter or not guilty. The jury returned a verdict finding defendant guilty of second-degree murder and the court entered judgment imposing a life sentence.

*Attorney General Rufus L. Edmisten, by Frank P. Graham and Thomas B. Wood, Assistant Attorneys General, for the state.*

*William Z. Wood, Jr. for defendant-appellant.*

BRITT, Justice.

[1]  By his first assignment of error defendant contends that the trial court erred in admitting into evidence certain testimony concerning blood and a photograph for the reason that the testimony and photograph had no substantive value and could only inflame and prejudice the jury against defendant. We find no merit in this assignment.

We are advised by the clerk of this court that the photograph complained of was not filed in this court as a part of the record on appeal. That being true, we will attempt to answer this assignment of error without viewing the photograph. "It is the duty of appellant to see that the record is properly made up and transmitted." 4 Strong's N.C. Index 3d, Criminal Law, § 154.

In *State v. Young*, 291 N.C. 562, 231 S.E. 2d 577 (1977), this court, speaking through Justice Huskins, said:

> "It is settled law in this State that a witness may use a photograph to illustrate his testimony and make it more intelligible to the court and jury; and if a photograph accurately depicts that which it purports to show and is relevant and material, the fact that it is gory or gruesome, or otherwise may tend to arouse prejudice, does not render it inadmissible." 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 34; *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652 (1972); *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671 (1971); *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410 (1971); *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970).

291 N.C. at 570-71, 231 S.E. 2d at 582.

The record discloses that the photograph in question was first shown to state's witness Devose who was describing the scene where the alleged offense occurred. He stated that the photograph showed Spring Street, the place where the fight took place, the place to which Young ran after he was stabbed, where he was when he died, and substantial blood on the ground. On the

record before us, we conclude that the photograph and evidence were relevant and that defendant has failed to show error.

[2] By his second assignment of error defendant contends the trial court erred when it refused to allow defendant's counsel to cross examine Devose concerning Young's past criminal record and his reputation for being a violent and dangerous person. There is no merit in this assignment.

In *State v. Winfrey*, 298 N.C. 260, 258 S.E. 2d 346 (1979), this court speaking through Chief Justice Branch, said:

> Generally, evidence of a victim's violent character is irrelevant, but when the accused knows of the violent character of the victim, such evidence is relevant and admissible to show to the jury that defendant's apprehension of death and bodily harm was reasonable. *State v. Johnson*, 270 N.C. 215, 154 S.E. 2d 48 (1967). Clearly, the reason for this exception is that, a "jury should, as far as is possible, be placed in defendant's situation and possess the same knowledge of danger and the necessity for action, in order to decide if defendant acted under reasonable apprehension of danger to his person or his life." *Id.* at 219, 154 S.E. 2d at 52.
>
> The second of the recognized exceptions to the general rule permits evidence of the violent character of a victim because it tends to shed some light upon who was the aggressor since a violent man is more likely to be the aggressor than is a peaceable man. The admission of evidence of the violent character of a victim which was unknown to the accused at the time of the encounter has been carefully limited to situations where all the evidence is circumstantial or the nature of the transaction is in doubt. *See* Stansbury, *supra*, § 106; *State v. Blackwell*, 162 N.C. 672, 78 S.E. 316 (1913). The relevancy of such evidence stems from the fact that in order to sustain a plea of self-defense, it must be made to appear to the jury that the accused was not the aggressor. *See* *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971).

298 N.C. at 262, 258 S.E. 2d at 347.

The record reveals that defendant did not know Young prior to the altercation in question and had no knowledge of Young's

reputation. That being true, the evidence did not come under the first section set forth in Winfrey, *supra*.

The record further reveals that in response to defense counsel's question, Devose testified that Young did not have a bad temper and "he wasn't really violent." The court sustained the state's objection to counsel's question, "Do you know of his past criminal record?" Since the record does not disclose what Devose's answer would have been to this question, the exclusion of the testimony is not shown to be prejudicial. *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972); *State v. Fountain,* 282 N.C. 58, 191 S.E. 2d 674 (1972).

The assignment of error is overruled.

[3] Defendant assigns as error the failure of the trial court "to reduce the charges to voluntary manslaughter at the end of the state's evidence." This assignment has no merit.

In effect defendant is saying that the evidence, viewed in the light most favorable to the state, was not sufficient for the court to submit the charge of second-degree murder to the jury. We disagree. Murder in the second-degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Fleming,* 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). The state's evidence summarized above was sufficient to support all elements of the offense of murder in the second-degree.

Defendant assigns as errors the trial court's recapitulation of certain evidence in its charge to the jury. First, he argues that the court erred in stating that the state's evidence tended to show that Young was trying to protect himself when he kicked at defendant; and, second, that the court erred in stating that defendant said he fell to the ground. There is no merit in these assignments.

As to the first instance complained of, we think the court accurately stated what the evidence showed. The witness Rafferty testified that he saw Young kick at defendant's hand, the hand "where the knife was." Witness Parker testified that Young was "trying to knock the knife away but scared to get too close."

As to the second instance, it is true that defendant did not testify that he fell to the ground. What he said was that when he

was kicked he bent over and blacked out. We perceive no prejudice to defendant by this slight misstatement. Furthermore, in order to be reviewable on appeal, slight inadvertences by the judge in the recapitulation of the evidence in his charge to the jury must be brought to his attention in time for him to make a correction. *State v. Willard*, 293 N.C. 394, 238 S.E. 2d 509 (1977); *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968).

[4] By his final assignment of error defendant contends that the trial court erred in its instructions to the jury by failing to instruct on defendant's imperfect right of self-defense. This assignment has no merit.

Defendant relies on our decision in *State v. Norris*, 303 N.C. 526, 279 S.E. 2d 570 (1981). In that case this court, speaking through Justice Huskins, articulated the difference between perfect self-defense, which requires a verdict of not guilty, and imperfect self-defense which would justify a verdict of voluntary manslaughter. We quote from that opinion:

> The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:
>
> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
>
> (3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
>
> (4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

(Citations omitted.) The existence of these four elements gives the defendant a *perfect right of self-defense* and requires a verdict of not guilty, not only as to the charge of murder in the first degree but as to all lesser included offenses as well.

On the other hand, if defendant believed it was necessary to kill the deceased in order to save herself from death or great bodily harm, and if defendant's belief was reasonable in that the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but defendant, although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the *imperfect right of self-defense*, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter. (Citations omitted.)

303 N.C. at 530, 279 S.E. 2d at 572-73.

The vice of the jury charge in *Norris* was that "the expression 'without justification or excuse' was used as the equivalent of 'self-defense' throughout the charge, not only with respect to murder in the first degree but also murder in the second degree and voluntary manslaughter." We held that this was error requiring a new trial.

The error recognized in *Norris* did not occur in this case. The court instructed the jury on the four elements of self-defense substantially as set forth in *Norris* and charged that a finding of those four elements would completely excuse the killing. Immediately thereafter, the court instructed as follows:

Now, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. However, if the State proves beyond a reasonable doubt that the defendant though otherwise acting in self-defense used excessive force or was the aggressor, though he had no murderous intent when he entered the fight, the defendant would be guilty of voluntary manslaughter.

The charge in the case at hand does not contain the error which we found in the *Norris* charge. The assignment of error is overruled.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.