STATE OF NORTH CAROLINA v. RALPH MAYNOR

No. 67A91

(Filed 25 June 1992)

**1. Homicide § 588 (NCI4th) — necessity for killing — honest but unreasonable belief — imperfect self-defense instruction inappropriate**

The trial court did not commit plain error in a first degree murder case by failing to instruct the jury that it should find that the defendant acted in the exercise of imperfect self-defense and was thus not guilty of first degree murder if it found that he killed the victims due to an honest but *unreasonable* belief that it was necessary to save himself from imminent death or great bodily harm. To the extent that some prior decisions of the Supreme Court and the Court of Appeals may tend to imply that a contrary holding is required, they are disapproved.

**Am Jur 2d, Homicide §§ 152-155.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary — modern cases. 73 ALR4th 993.**

**2. Evidence and Witnesses § 282 (NCI4th) — character evidence — rebuttal by acts of misconduct — harmless error**

Assuming arguendo that a witness's testimony about defendant's acts of violence toward her was not admissible to rebut defendant's evidence of his nonviolent character, the admission of such testimony in defendant's trial for three first degree murders was harmless beyond a reasonable doubt in light of defendant's testimony about prior acts of violence he had committed and the uncontradicted evidence at trial that defendant shot each of the three victims in the back two or more times, stopping at one point to reload his rifle before continuing to shoot them, that there was no gun in the victims' car before, during or after the killings, and that nothing had ever happened previously to cause defendant to believe that any of the victims wanted to harm him. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Appeal and Error §§ 517, 797 et seq.; Evidence §§ 339-343.**

STATE v. MAYNOR

[331 N.C. 695 (1992)]

3. **Criminal Law § 445 (NCI4th)— jury arguments—personal disbelief of witness—curative instruction**

Impropriety in the prosecutors' closing arguments which expressed their personal disbelief in the testimony of a key defense witness was cured when the trial court sustained defendant's objections thereto and instructed the jury to disregard such arguments.

**Am Jur 2d, Appeal and Error § 807.**

**Propriety and prejudicial effect of counsel's negative characterization or description of witness during summation of criminal trial—modern cases. 88 ALR4th 209.**

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by *Ellis, J.*, on 11 December 1989 in the Superior Court, ROBESON County. Heard in the Supreme Court on 13 February 1992.

*Lacy H. Thornburg, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant-appellant Maynor.*

MITCHELL, Justice.

The defendant was tried upon proper indictments charging him with three counts of murder. The jury found the defendant guilty of murder in the first degree on all three counts under the theory that the defendant committed the murders during the perpetration of a felony committed with a deadly weapon. At the conclusion of a capital sentencing proceeding, the jury recommended sentences of life imprisonment for the defendant. The trial court sentenced the defendant to three consecutive sentences of life imprisonment.

The defendant presents three arguments on appeal. First, he argues that the trial court's jury instructions on self-defense constituted plain error. Next, the defendant contends that the trial court erred in allowing the State to introduce evidence of specific acts of misconduct by the defendant to rebut the defendant's character evidence. Finally, the defendant argues that he was preju-

diced by the prosecutors' closing arguments which expressed their personal disbelief in the testimony of a key defense witness.

The State's evidence tended to show that on 9 October 1985, the defendant Ralph Maynor drove Theresa Oxendine and her seven-year-old daughter to Pembroke, North Carolina in Oxendine's 1979 Ford LTD. After they ran some errands in Pembroke, they left to go to the mobile home they lived in together three or four miles out of town. While driving, the defendant kept his loaded .44 caliber automatic rifle at his side.

As the defendant drove toward their mobile home, he told Oxendine that he believed they were being followed. She turned around and saw a car, but it was about a mile behind them. As they neared a bridge, the defendant repeated that they were being followed. Oxendine again looked around and saw a car, but it was doing nothing unusual. As they drove onto the bridge, the defendant "got ready to stop" and told Oxendine to get down. After they crossed the bridge, the defendant pulled the car to a stop on the right shoulder of the road. Oxendine told her daughter sitting in the back seat to get down. After she had done this, a small blue car swerved in front of them.

Oxendine saw the defendant get out of her car with the rifle, walk up to the blue car, and begin to shoot. At this point the blue car had gone down an embankment. The defendant began to shoot the people in the blue car. Oxendine heard six or seven shots. After the defendant had finished shooting, he got back into Oxendine's car and they left "in a hurry." Oxendine never saw any weapon other than the defendant's gun. Oxendine asked the defendant whether he had killed "all of them," and he replied that he had.

Dawn Maynor testified at trial that she was married to the defendant. Prior to their marriage, the defendant had told her about killing the three victims in question in this case. The defendant told her that the three victims had been trying to kill him, and he had shot them before they could shoot him. He told her that he had then gone up to the blue car and shot the last man who was still breathing.

State Bureau of Investigation Special Agent James Bowman testified that he and a detective had interviewed the defendant on 16 July 1988. The defendant made a statement to them, during

which he gave his version of the events of 9 October 1985. He said he had thought the blue car with three men was following him. He stated that the blue car had bumped the car he was driving in the rear going about fifty-five miles per hour. He said he had seen what he thought was a gun being passed from the back seat to the front. He had pulled over to the side of the road, and the car with the three men had then swerved in front of him and blocked him from leaving. He had seen the gun being passed around in the blue car and had gotten out and shot into the blue car before the men could shoot him. He stated that he had feared for his life and had believed that had he not shot the men they would have killed him and the others with him.

The defendant gave testimony at trial substantially the same as the statement he had made to law enforcement officers. The defendant also testified that prior to the events of 9 October 1985, nothing had ever happened with any of the three victims to cause him to believe that any of them wanted to hurt him.

The defendant also introduced the testimony of Crystal Oxendine, the daughter of Theresa Oxendine. At the time of the defendant's trial in 1989, Crystal was ten-years-old. Crystal testified that on 9 October 1985, she was in the back seat of the car the defendant was driving. She saw two people in a blue car, and what looked like a stick coming out of the car on the passenger side. She further stated that this "stick" resembled the top of a gun. On cross-examination, Crystal stated that she had heard about seven to thirteen shots and that the entire incident had lasted about thirty minutes. She testified that the car the defendant had been driving had not been bumped by the blue car.

[1]   By his first assignment of error, the defendant contends that the trial court gave erroneous instructions on self-defense to the jury. Specifically, the defendant contends that the trial court erred by failing to instruct the jury that if it found that he killed the victims due to an honest but *unreasonable* belief it was necessary to do so to protect himself from death or great bodily harm, the jury must conclude that he was engaged in acts of imperfect self-defense when he killed the victims and was not guilty of first-degree murder. We note here that the defendant has properly notified this Court that he did not object to the trial court's instructions on this ground. Therefore, our review is for "plain error." *State v. Odom*, 307 N.C. 655, 300 S.E.2d 378 (1983). We conclude that

STATE v. MAYNOR

[331 N.C. 695 (1992)]

the trial court committed no such error when instructing the jury on the doctrine of self-defense as a defense to a charge of murder.

In the present case, the jury found the defendant guilty of first-degree murder solely on the basis of the felony murder theory. At the outset, we assume *arguendo* but do not decide that in certain circumstances, some instruction on the doctrine of self-defense as a defense to first-degree murder under the felony murder theory may be proper. *But see, e.g., Rainer v. State,* 342 So. 2d 1348 (Ala. Crim. App. 1977); *Gray v. State,* 463 P.2d 897 (Alaska 1970); *State v. Celaya,* 135 Ariz. 248, 660 P.2d 849 (1983); *People v. Loustunau,* 181 Cal. App. 3d 163, 226 Cal. Rptr. 216 (1986); *State v. Marks,* 226 Kan. 704, 602 P.2d 1344 (1979); *Layne v. State,* 542 So. 2d 237 (Miss. 1989); *People v. Guraj,* 105 Misc. 2d 176, 431 N.Y.S.2d 925 (N.Y. Sup. Ct. 1980); *Smith v. State,* 209 Tenn. 499, 354 S.W.2d 450 (1961); *Dank v. State,* 597 S.W.2d 358 (Tex. Crim. App. 1980); *State v. Dennison,* 115 Wash. 2d 609, 801 P.2d 193 (1990) *(en banc).*

It is well settled that perfect self-defense which excuses a killing altogether arises where, at the time of the killing:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Bush,* 307 N.C. 152, 158, 297 S.E.2d 563, 568 (1982) (quoting *State v. Norris,* 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)). Our cases also recognize an imperfect right of self-defense which arises when *both* elements (1) *and* (2) in the preceding quotation exist, but elements (3) and/or (4) do not exist. *State v. Mize,* 316 N.C. 48, 340 S.E.2d 439 (1986); *State v. Bush,* 307 N.C. 152, 297

S.E.2d 563 (1982); *State v. Norris*, 303 N.C. 526, 279 S.E.2d 570 (1981); *State v. Potter*, 295 N.C. 126, 244 S.E.2d 397 (1978); *State v. Deck*, 285 N.C. 209, 203 S.E.2d 830 (1974); *State v. Ellerbe*, 223 N.C. 770, 28 S.E.2d 519 (1944). Elements (1) *and* (2) "are common to *both* perfect self-defense and imperfect self-defense." *State v. Wilson*, 304 N.C. 689, 695, 285 S.E.2d 804, 808 (1982) (emphasis added). Therefore, a trial court is not required to instruct on either perfect or imperfect self-defense with regard to a charge of murder "unless evidence was introduced tending to show that at the time of the killing, the defendant *reasonably* believed" it necessary to kill the victim in order to save himself from imminent death or great bodily harm. *State v. Norman*, 324 N.C. 253, 260, 378 S.E.2d 8, 12 (1989).

For the foregoing reasons, we hold that the trial court did not commit plain error in the present case by failing to instruct the jury that it should find that the defendant acted in the exercise of imperfect self-defense if it found that he killed the victims due to an honest but *unreasonable* belief that it was necessary to save himself from imminent death or great bodily harm. To the extent that some prior decisions of this Court and the Court of Appeals may tend to imply that a contrary holding is required, they are disapproved. *E.g.*, *State v. Jones*, 299 N.C. 103, 261 S.E.2d 1 (1980); *State v. Thomas*, 184 N.C. 757, 114 S.E. 834 (1922); *State v. Best*, 79 N.C. App. 734, 340 S.E.2d 524 (1986).

[2] In his next assignment of error, the defendant contends that the trial court committed reversible error by allowing the State to introduce evidence of specific acts of misconduct by the defendant to rebut his character evidence. In the case *sub judice*, the defendant called Clara Chavis who testified to his non-violent character. The trial court erroneously sustained the defendant's objection when the State attempted to cross-examine Chavis about her knowledge of several incidents of violence by the defendant against Theresa Oxendine. N.C.G.S. § 8C-1, Rule 405(a) (1991). Thereafter, the State called Oxendine to testify concerning the acts of violence by the defendant against her. The State indicated to the trial court on *voir dire* that it sought to introduce Oxendine's testimony in order to rebut Chavis' testimony as to the defendant's non-violent character. The trial court then permitted Oxendine to testify about specific instances of violence by the defendant, including one occasion on which the defendant threatened to blow up Oxendine's mother's house in order to get Oxendine to visit

him. Oxendine further testified that on another occasion the defendant shot at her inside their mobile home three or four times as she was lying on the bed.

Assuming *arguendo* that Oxendine's testimony was not admissible under N.C.G.S. § 8C-1, Rule 404(b) or any other of our Rules of Evidence, the defendant has not carried his burden of showing that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." N.C.G.S. § 15A-1443(a) (1988). Uncontradicted evidence at trial was to the effect that the defendant shot each of the three victims in the back two or more times, stopping at one point to reload his rifle before continuing to shoot them. Numerous witnesses testified that before, during, and after the killings there was no gun in the victims' car. The defendant testified that nothing had ever happened previously to cause him to believe that any of the three victims wanted to harm him. Further, the defendant himself testified at trial to prior acts of violence he had committed, including cutting Oxendine's husband. We therefore conclude that if the admission of the testimony of Oxendine complained of here was error, it was harmless. *Id.* This assignment of error is overruled.

[3] By his next assignment of error the defendant contends that he was prejudiced by the prosecutors' repeated assertions during their closing arguments to the jury that they personally disbelieved a key defense witness. On four separate occasions during closing arguments, the prosecutors interjected their personal opinions concerning the testimony of Crystal Oxendine. After each such statement, the defendant's counsel entered an objection which was sustained by the trial court. After the second statement, the trial court also instructed the jury, "Don't consider what the D.A. believes." The defendant argues that despite the trial court's remedial actions, the prosecutors were still able to place their personal beliefs before the jury, thereby violating the defendant's right to due process of law. We do not agree. We have said that: "Where immediately upon a defendant's objection to an improper remark made by the prosecutor in his closing argument, the trial court instructs the jury to disregard the offending statement, the impropriety is cured." *E.g., State v. Small*, 328 N.C. 175, 185, 400 S.E.2d 413, 418 (1991) (quoting *State v. Woods*, 307 N.C. 213, 222, 297 S.E.2d 574, 579 (1982)). In the present case, the trial court cured the impropriety of the prosecutors' arguments when it sustained the

defendant's objections and instructed the jury to disregard such arguments.

We hold that the defendant received a fair trial free from prejudicial error.

No error.