IN THE SUPREME COURT OF NORTH CAROLINA

No. 335PA16

Filed 6 April 2018

STATE OF NORTH CAROLINA

v.

GYRELL SHAVONTA LEE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 789 S.E.2d 679 (2016), finding no error after appeal from a judgment entered on 12 July 2015 by Judge J. Carlton Cole in Superior Court, Pasquotank County. Heard in the Supreme Court on 6 November 2017.

*Joshua H. Stein, Attorney General, by Amy Kunstling Irene, Special Deputy Attorney General, for the State.*

*Glenn Gerding, Appellate Defender, by Paul M. Green, Assistant Appellate Defender, for defendant-appellant.*

*Williams Mullen, by Camden R. Webb; and Ilya Shapiro, pro hac vice, for Cato Institute, amicus curiae.*

NEWBY, Justice.

This case is about whether the trial court erroneously instructed the jury when it omitted the relevant stand-your-ground provision from its instructions on self-defense, and, if so, whether such error was preserved. By omitting the relevant stand-your-ground provision, the trial court's jury instructions were an inaccurate and

misleading statement of the law. Such error is preserved when the trial court deviates from an agreed-upon pattern instruction. Defendant has shown a reasonable possibility that, had the trial court given the required stand-your-ground instruction, a different result would have been reached at trial. Accordingly, we reverse the decision of the Court of Appeals. Defendant is entitled to a new trial with proper self-defense and stand-your-ground instructions.

On 31 December 2012, defendant celebrated New Year's Eve at a neighbor's home in Elizabeth City. Shortly after midnight, defendant left his neighbor's home on foot and encountered several people convened around a car, including Quinton Epps (Epps) and defendant's cousin, Jamieal Walker (Walker). Epps and Walker were engaged in a heated argument. Epps ultimately left in the car, and defendant went inside his home. About twenty minutes later, another car approached defendant's home. Defendant and Walker were standing "beside the house and in the front yard." Defendant saw Epps exit the car's back passenger side. Walker and Epps began arguing, and Epps became verbally abusive and aggressive. Epps got back into the car and left the scene. Soon thereafter, another car drove alongside defendant's backyard, stopping briefly. Defendant retrieved his pistol and concealed it on his person, "[out of] instinct," though defendant believed "[Epps] wasn't a threat

at th[at] time." The car ultimately parked three houses down from defendant's residence. Epps and several others exited the car.

Defendant and Walker walked down the street to talk to Epps. Epps and Walker again argued in the street and sidewalk area as defendant watched from a short distance. Defendant saw that Epps had a gun behind his back. The argument escalated, and Walker punched Epps in the face. Epps grabbed Walker's hoodie, shot him twice in the stomach, and continued shooting as Walker turned to flee. Walker was later found dead nearby.

After Epps fired his last shot at Walker, Epps turned and pointed his gun at defendant. Before Epps could fire, defendant fatally shot Epps. Defendant stated that it happened quickly, lasting approximately four seconds, and added that he would have shot Epps to protect Walker but could not get a clear shot because Epps and Walker were too close together during the struggle. Defendant was ultimately indicted for first-degree murder.

At trial defendant asserted that he fired the fatal shot in self-defense, maintaining that he shot Epps only after Epps turned the gun on him and denying that he continued to shoot after Epps fell to the ground. Defendant introduced evidence supporting his version of events, including, *inter alia*, an eyewitness, his police interview, and taped telephone calls from the jail. The State argued defendant

did not shoot in self-defense and introduced, *inter alia*, a witness who testified that while Epps was "on the ground," defendant "came out of nowhere" and "[ran] up and [kept] shooting [Epps]." During closing arguments, the State contended that defendant should have retreated because a reasonable person in defendant's shoes would have "removed himself from the situation" and "run[ ] away."

At the trial court's request, the parties agreed to the delivery of N.C.P.I.–Crim. 206.10, the pattern jury instruction on first-degree murder and self-defense. This instruction provides, in relevant part: "Furthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be." N.C.P.I.–Crim. 206.10 (June 2014). In addition, N.C.P.I.–Crim. 308.10, which is incorporated by reference in footnote 7 of N.C.P.I.–Crim. 206.10 and is entitled "Self-Defense, Retreat," states that "[i]f the defendant was not the aggressor and the defendant was . . . [at a place the defendant had a lawful right to be], the defendant could stand the defendant's ground and repel force with force." *Id.* 308.10 (June 2012) (brackets in original).

Though the trial court agreed to instruct the jury on self-defense according to N.C.P.I.–Crim. 206.10, it ultimately omitted the "no duty to retreat" language of N.C.P.I.–Crim. 206.10 from its actual instructions without prior notice to the parties and did not give any part of the "stand-your-ground" instruction. Defense counsel did

not object to the instruction as given. Though the jury reported that it was deadlocked, it ultimately convicted defendant of second-degree murder, following approximately nine hours of deliberation. Defendant appealed.

At the Court of Appeals, defendant argued that the trial court's "omission of a jury instruction that a person confronted with deadly force has no duty to retreat but can stand his ground" was error, preserved by the trial court's deviation from the agreed-upon pattern instruction, *see State v. Withers*, 179 N.C. App. 249, 255, 633 S.E.2d 863, 867 (2006), or plain error, regardless, *see State v. Wilson*, 197 N.C. App. 154, 164-65, 676 S.E.2d 512, 518-19, *disc. rev. denied*, 363 N.C. 589, 684 S.E.2d 158 (2009). The Court of Appeals affirmed defendant's conviction, reasoning that the law limits a defendant's right to stand his ground to "any place he or she has the lawful right to be," *State v. Lee*, ___ N.C. App. ___, ___, 789 S.E.2d 679, 685 (2016) (emphasis omitted) (quoting N.C.G.S. § 14-51.3(a) (2015)), which did not include the public street where the incident occurred. We allowed defendant's petition for discretionary review.

Defendant contends the trial court erroneously omitted the relevant stand-your-ground provision and that such error is preserved by the trial court's deviation from the pattern instruction. We conclude that, by omitting the relevant stand-your-

ground provision from the agreed-upon instructions on self-defense, the trial court's jury instructions constituted preserved error.

"The jury charge is one of the most critical parts of a criminal trial." *State v. Walston*, 367 N.C. 721, 730, 766 S.E.2d 312, 318 (2014). "[W]here competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case . . . ." *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (citations and emphasis omitted); *see State v. Guss*, 254 N.C. 349, 351, 118 S.E.2d 906, 907 (1961) (per curiam) ("The jury must not only consider the case in accordance with the State's theory but also in accordance with defendant's explanation.").

Our statutes provide two circumstances in which individuals are justified in using deadly force, thus excusing them from criminal culpability. Section 14-51.3 of North Carolina's General Statutes, entitled "Use of force in defense of person; relief from criminal or civil liability," provides:

> (a)    A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, *a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if* either of the following applies:

>  (1)   *He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.*
>
>     . . . .
>
>  (b)   A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force . . . .

N.C.G.S. § 14-51.3 (2017) (emphases added).

Section 14-51.2, entitled "Home, workplace, and motor vehicle protection; presumption of fear of death or serious bodily harm," provides that "[a] lawful occupant within his . . . home, motor vehicle, or workplace does not have a duty to retreat from an intruder," *id.* § 14-51.2(f) (2017), and "is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself . . . or another when using defensive force" in the case of "an unlawful and forcible entry," *id.* § 14-51.2(b) (2017). The relevant distinction between the two statutes is that a rebuttable presumption arises that the lawful occupant of a home, motor vehicle, or workplace reasonably fears imminent death or serious bodily harm when using deadly force at

those locations under the circumstances in N.C.G.S. § 14-51.2(b).  This presumption does not arise in N.C.G.S. § 14-51.3(a)(1).[1]

Under either statutory provision, a person does not have a duty to retreat, but may stand his ground.[2]  Accordingly, when, as here, the defendant presents competent evidence of self-defense at trial, the trial court must instruct the jury on a defendant's right to stand his ground, as that instruction informs the determination of whether the defendant's actions were reasonable under the circumstances, a critical component of self-defense.  *See State v. Blevins*, 138 N.C. 668, 670-71, 50 S.E. 763, 764 (1905) ("[The] necessity, real or apparent, [is] to be determined by the jury" and the defendant "can have that necessity determined in view of the fact that he has

---

[1] Contrary to the opinion below, the phrase "any place he or she has the lawful right to be" is not limited to one's home, motor vehicle, or workplace, but includes any place the citizenry has a general right to be under the circumstances. *See*, *e.g.*, *Guss*, 254 N.C. at 351, 118 S.E.2d at 907; *see also* Research Div., N.C. Gen. Assembly, *Summaries of Substantive Ratified Legislation* 2011, at 48 (Dec. 2011) ("A person, *wherever located*, has no duty to retreat, and may use what force is necessary . . . ." (emphasis added)).

[2] In 2011 the General Assembly amended the law of self-defense in North Carolina, Act of June 17, 2011, ch. 268, sec. 1, 2011 N.C. Sess. Laws 1002, 1002-04, to clarify that one who is not the initial aggressor may stand his ground, regardless of whether he is in or outside the home. *Compare State v. Godwin*, 211 N.C. 419, 422, 190 S.E. 761, 763 (1937) ("When an attack is made with a murderous intent, the person attacked . . . may stand his ground and kill his adversary, if need be."), *with State v. Pennell*, 231 N.C. 651, 654, 58 S.E.2d 341, 342 (1950) ("[W]hen a person . . . is attacked in his own dwelling, or home, or place of business . . . the law imposes upon him no duty to retreat before he can justify his fighting in self-defense . . . .").

a right to stand his ground . . . ."); N.C.P.I.–Crim. 206.10 (A successful self-defense claim requires, *inter alia*, a showing that "the defendant believed it was necessary to kill the victim . . . to save [himself] from death or great bodily harm.").

Though the trial court here agreed to instruct the jury on self-defense under N.C.P.I.–Crim. 206.10, it omitted the "no duty to retreat" language of N.C.P.I.–Crim. 206.10 without notice to the parties and did not give any part of N.C.P.I.–Crim. 308.10, the "stand-your-ground" instruction. While defendant offered ample evidence at trial that he acted in self-defense while standing in a public street where he had a right to be when he shot Epps, the trial court did not instruct the jury that defendant could stand his ground. The State nonetheless contends that defendant did not object to the instruction as given, thereby failing to preserve the error below and rendering his appeal subject to plain error review only.

When a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection.

> [A] request for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

*State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988). Because the trial court here agreed to instruct the jury in accordance with N.C.P.I.–Crim. 206.10, its omission of the required stand-your-ground provision substantively deviated from the agreed-upon pattern jury instruction, thus preserving this issue for appellate review under N.C.G.S. § 15A-1443(a).

Moreover, the record reflects a reasonable possibility that, had the trial court given the required stand-your-ground instruction, a different result would have been reached at trial. *See State v. Ramos*, 363 N.C. 352, 355-56, 678 S.E.2d 224, 227 (2009) (applying "reasonable possibility" of "different result" standard to determine whether erroneous instruction was prejudicial). During closing argument the State contended that defendant's failure to retreat was culpable. As such, the omission of the stand-your-ground instruction permitted the jury to consider defendant's failure to retreat as evidence that his use of force was unnecessary, excessive, or unreasonable. *See State v. Smith*, 360 N.C. 341, 346, 626 S.E.2d 258, 261 (2006) (The purpose of a jury instruction "is to give a clear instruction which applies the law to the evidence" and thus "assist the jury in understanding the case and in reaching a correct verdict." (quoting *State v. Williams,* 280 N.C. 132, 136, 184 S.E.2d 875, 877 (1971))).

Accordingly, defendant is entitled to a new trial with proper instructions on self-defense.[3]

In sum, we conclude that by omitting the stand-your-ground provision from the agreed-upon instructions on self-defense, the trial court's jury instructions constituted preserved error. Defendant has shown a reasonable possibility that, had the trial court included the stand-your-ground provision in its instructions, a different result would have been reached at trial. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court with instructions to vacate defendant's conviction and further remand this case to the trial court for a new trial with proper instructions on self-defense and stand-your-ground.

REVERSED AND REMANDED; NEW TRIAL.

Chief Justice MARTIN concurring.

This case is about what a man did in the few seconds after he saw his cousin get shot. We now have to consider that man's response to this violent event in light

---

[3] Because we resolve defendant's appeal on this issue, we do not address his remaining arguments.

of the doctrines of self-defense and defense of another under our stand-your-ground statutes.

I agree with the majority's ruling that the trial court erred by not instructing the jury on defendant's ability to lawfully stand his ground in self-defense. I therefore fully join in the majority opinion. I write separately to note that defendant has also argued that the trial court should have instructed the jury on defense of another, and to observe that the trial court's omission of an instruction on that defense also constituted error.

"[A] judge has an obligation to fully instruct the jury on all substantial and essential features of the case . . . arising on the evidence." *State v. Harris*, 306 N.C. 724, 727, 295 S.E.2d 391, 393 (1982). This obligation arises "[r]egardless of requests by the parties," *id.*, and a trial court commits error if it fails to meet this obligation, *see State v. Todd*, 264 N.C. 524, 531, 142 S.E.2d 154, 159 (1965). Our Court has applied this standard specifically to jury instructions on both self-defense and defense of another. *See id.*; *State v. Montague*, 298 N.C. 752, 755, 259 S.E.2d 899, 902 (1979). Articulating a principle that should apply equally to defense of another, this Court has stated that, "[w]here there is evidence that [a] defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in [the] defendant's evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974); *see also State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citing *State v. McCray*, 312 N.C. 519, 529, 324 S.E.2d 606,

-12-

614 (1985)) ("When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense . . . , courts must consider the evidence in the light most favorable to [the] defendant.").

Under our State's common law, one could "kill in defense of another if one believe[d] it to be necessary to prevent death or great bodily harm to the other 'and ha[d] a reasonable ground for such belief.' " *State v. Perry*, 338 N.C. 457, 466, 450 S.E.2d 471, 476 (1994) (quoting *State v. Terry*, 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994)). The reasonableness of the defender's belief was "to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the killing." *Id.* (quoting *Terry*, 337 N.C. at 623, 447 S.E.2d at 724).

Two additional common law rules limited the scope of this doctrine. This Court stated the first rule in *State v. Gaddy*: "[T]he right to defend another [could] be no greater than the latter's right to defend himself." *See State v. Gaddy*, 166 N.C. 341, 346-47, 81 S.E. 608, 610 (1914). Under the second rule, which appeared in *State v. McAvoy* and other cases, the initial aggressor in a conflict could not claim perfect self-defense. *See, e.g.*, *State v. McAvoy*, 331 N.C. 583, 595-96, 417 S.E.2d 489, 497 (1992) (citing *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)). An aggressor who started a fight without murderous intent, however, would still have been entitled to claim *imperfect* self-defense. *Id.* at 596, 417 S.E.2d at 497 (citing *Norris*, 303 N.C. at 530, 279 S.E.2d at 573). As a result, under the common law rules in *Gaddy* and *McAvoy*, a defendant who intervened to defend someone who had

started a fight without murderous intent would have been entitled to a jury instruction only on imperfect defense of another. If a defendant established imperfect defense of another, a jury could not have acquitted him but could have convicted him of voluntary manslaughter instead of murder. *See id.* (citing *Norris*, 303 N.C. at 530, 279 S.E.2d at 573).

In 2011, however, the General Assembly enacted N.C.G.S. §§ 14-51.3 and 14-51.4, which at least partially abrogated—and may have completely replaced—our State's common law concerning self-defense and defense of another.

Subsection 14-51.3(a) states that a person's use of non-deadly force is justified "when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against [someone else's] imminent use of unlawful force." N.C.G.S. § 14-51.3(a) (2017). That subsection then establishes that a person is justified in using *deadly* force when that person is in a place that "he or she has the lawful right to be," *id.*, and "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another," *id.* § 14-51.3(a)(1).

N.C.G.S. § 14-51.4 provides exceptions to the justifications for defensive force set forth in subsection 14-51.3(a), stating that "[t]he justification[s] described in . . . [section] 14-51.3 [are] not available to a person who used defensive force" in certain enumerated circumstances. *Id.* § 14-51.4 (2017). Subsection 14-51.4(2) then gives

one of these circumstances; it states that a person's use of defensive force is not justified when that person "[i]nitially provoke[d] the use of force against himself or herself." *Id.* § 14-51.4(2). This subsection does *not* create an exception to section 14-51.3, however, when a defendee—the person that a defendant acts to protect—provokes a fight with non-deadly force and a defendant then intervenes to protect that defendee *from* deadly force. In other words, when a defendant uses deadly force to protect an initial aggressor who used non-deadly force against an attacker who responds with deadly force, that defendant's actions are still fully justified under subsections 14-51.3(a)(1) and 14-51.4(2).

This statutory framework thus appears to contradict the common law rules in *Gaddy* and *McAvoy* when those rules are applied together, because it does not reduce a defendant's justification to imperfect defense of another in this context. That defendant can rightly claim *perfect* defense of another. Nor does the only other exception in section 14-51.4 reduce a defendant's justification for the use of deadly force stated in subsection 14-51.3(a)(1) from perfect to imperfect defense of another; that exception states only that a person is not justified in using defensive force under section 14-51.3 if the person "[w]as attempting to commit, committing, or escaping after the commission of a felony." *Id.* § 14-51.4(1). So, under this statutory framework, a defendant who uses deadly force to protect an initial aggressor who used non-deadly force against an attacker who responds with deadly force should be

entitled to perfect self-defense, as long as that defendant was not attempting to commit or committing a felony, or escaping after committing a felony, in the process.

It is important to note the statutory limits of the justification defense in subsection 14-51.3(a). At first glance, one might think that a defendant could defend another against deadly force even when that other had initially provoked a fight *with* deadly force. But that is not so. Because the second sentence of subsection 14-51.3(a), in context, describes a heightened variant of the justification discussed by the first sentence—a justification sufficient to cover deadly as well as non-deadly force—the requirement from the first sentence that the hostile force being opposed be "unlawful" should be imputed to the second sentence. Thus, no justification is available for using deadly force to defend another against *lawful* force. If a defendee provokes a fight with deadly force, then the use of deadly force by the opposing combatant would be lawful. It follows that a defendant would not be justified under subsection 14-51.3(a)(1) in using deadly force himself against that opposing combatant to protect the defendee, as the defendant in that scenario would not be defending another against *unlawful* force. The justification for deadly force set forth in subsection 14-51.3(a)(1) is inherently limited in this way. *Cf. State v. Holloman*, 369 N.C. 615, 628-29, 799 S.E.2d 824, 833 (2017) (concluding that, when an initial aggressor provokes a fight using deadly force and the opposing combatant responds with deadly force, that aggressor is not justified in using deadly force in response under N.C.G.S. § 14-51.4(2)(a)).

Turning to the case at hand, defendant was entitled to a jury instruction on perfect defense of another. Based on the evidence at trial, a jury could reasonably conclude the following: Defendant saw his cousin, Jamieal Walker, being repeatedly shot by Quinton Epps, after Walker had punched Epps in the face. Walker began to run away, with Epps still shooting at him, and then Epps immediately turned his gun toward defendant. At that point, defendant shot Epps "to get him to drop his weapon." The fact that Epps momentarily turned his gun away from Walker did not mean that Walker was instantly removed from mortal danger. Both Charles Bowser, an eyewitness, and defendant himself testified that the entire sequence of Epps' turning his gun away from Walker and toward defendant and defendant's shooting of Epps took, at most, "four seconds." While the Court of Appeals leaned heavily on the fact that Walker was already fatally wounded before defendant shot Epps, *State v. Lee*, ___ N.C. App. ___, ___, 789 S.E.2d 679, 689 (2016), defendant could not have known at that moment whether Walker's injuries were fatal or what chance Walker had of survival. Also, as the majority notes, defendant stated that he would have shot Epps sooner if Epps and Walker had not been so close together during their fight. I accept all of these facts as true for the purpose of deciding this issue.

Given these facts, Epps used deadly force against Walker after Walker had merely thrown a punch. That punch did not justify a reasonable belief on Epps' part that shooting Walker was necessary to prevent Epps from suffering death or great bodily harm, so Epps himself did not act in lawful self-defense under subsection

14-51.3(a)(1) when he shot Walker. This means that Epps' use of deadly force was unlawful, and defendant therefore could have defended Walker from it with deadly force. Defendant was in a public street, where he had a lawful right to be, and, because Epps had already shot Walker multiple times, defendant could have reasonably believed that his own use of deadly force was necessary to save Walker from death or further serious bodily injury. This satisfies the standard for the use of deadly force in defense of another under subsection 14-51.3(a)(1). Thus, the trial court erred by omitting a jury instruction on defense of another.

In sum, the trial court did not instruct the jury on perfect defense of another, even though defense of another under N.C.G.S § 14-51.3(a)(1) was a "substantial and essential feature[ ] . . . arising on the evidence" in this case. *See Harris*, 306 N.C. at 727, 295 S.E.2d at 393. The trial court erred by not instructing the jury on this defense. Defendant concedes that this issue was not properly preserved below, so this Court should review the issue only for plain error. I do not need to address whether the omission of this instruction rose to the level of plain error, however, as defendant will receive a new trial under the majority's ruling regardless. If the same or substantially similar evidence is presented at a future trial of defendant, the trial court should instruct the jury on the law concerning perfect defense of another. The jury should not be precluded from considering any reasonable explanation of defendant's actions right after he saw his cousin get shot.