STATE OF NORTH CAROLINA v. ERVIN LOUIS TERRY, JR.

No. 364A92

(Filed 9 September 1994)

### 1. Homicide § 262 (NCI4th)— felony murder—connection between murder and underlying felony

The trial court did not err in submitting first-degree felony murder to the jury where defendant argued that there was an insufficient connection between the murder and the underlying felony of felonious assault, but an interrelationship clearly existed between this felonious assault and the homicide in that the assault of one victim and the killing of another were part of an unbroken chain of events all of which occurred within two seconds. The law does not require that the homicide be committed to escape or to complete the underlying felony in order to apply the felony-murder principle, there need not be a "causal relationship" between the underlying felony and the homicide, only an "interrelationship," and, as a result of the 1977 Amendment to N.C.G.S. § 14-17, the requirement that the underlying felony must create "a substantial, foreseeable risk to human life" is no longer applicable.

**Am Jur 2d, Homicide § 442.**

### 2. Homicide § 651 (NCI4th)— murder and assault—defense of others—instructions

There was no error in a prosecution for first-degree murder, second-degree murder, and assault in the trial court's instruction that "one may only do in defense of a third person what that other person might do in his own defense" where defendant contended that the instruction implied that the jury should judge the reasonableness of defendant's actions in defending his friend from the circumstances as they appeared to the friend and not as they appeared to defendant, but the full jury instructions, as they were

likely to have been understood by the jury, convey a correct version of the law of defense of another.

**Am Jur 2d, Homicide §§ 519 et seq.**

3. **Evidence and Witnesses § 757 (NCI4th)— murder and assault—defendant's statement to investigators—constitutional rights—defendant's testimony repeating and recanting statement**

Any error the trial court may have made in a prosecution for first-degree murder, second-degree murder, and assault by denying defendant's motion to suppress a statement he had made to investigators was harmless where the State introduced the statement; defendant testified on direct examination that he had made this statement, that the statement was not true, and that he had made it because he was afraid of going to jail; and defendant did not claim that he was impelled to give this testimony as a direct result of the trial court's earlier admission of his statement into evidence. This testimony waived defendant's objection and renders harmless any error in denying the motion to suppress.

**Am Jur 2d, Appeal and Error § 806.**

4. **Criminal Law § 434 (NCI4th)— murder and assault—prosecutor's argument—stolen gun**

There was no prejudice in the prosecutor's argument regarding the serial number of the gun used by defendant in a prosecution for first-degree murder, second-degree murder, and assault where the prosecutor's comment clearly implies that defendant knowingly purchased a stolen handgun. Even if this was an improper argument, as there was no evidence to support it, there was no prejudice because prosecutor's implication had slight, if any, effect on the jury's rejection of the defenses proffered by defendant and the outcome of the trial would have been the same had the prosecutor's summation not carried this implication.

**Am Jur 2d, Trial § 626.**

5. **Criminal Law § 463 (NCI4th)— murder and assault—self-defense—prosecutor's argument—victim shot in back**

The trial court did not err in a prosecution for first-degree murder, second-degree murder, and assault in which defendant claimed self-defense by overruling defendant's objection to the prosecutor's closing argument that one victim could not have

been a threat where the medical examiner had testified that the victim was shot once in the abdomen and twice in the back. There was sufficient evidence to support an inference that the victim was either standing with his back to defendant or attempting to flee when he was shot.

**Am Jur 2d, Trial § 611.**

**6. Criminal Law § 1125 (NCI4th)— second-degree murder— nonstatutory aggravating factors—course of conduct— joined offenses**

The trial court erred in a prosecution for first-degree murder, second-degree murder, and assault by finding as a nonstatutory aggravating factor for the second-degree murder that the murder was part of a course of conduct and that that course of conduct included other crimes of violence where defendant was convicted contemporaneously for the joined offenses of first-degree murder and assault with a deadly weapon, which the trial judge found to have established a course of conduct.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-_Gregg_ cases. 65 ALR4th 838.**

Appeal pursuant to N.C.G.S. § 7A-27(a) from judgments entered by Hobgood, J., at the 24 February 1992 Criminal Session of Superior Court for Vance County, imposing a sentence of life imprisonment upon a verdict of guilty of first-degree murder and the jury's recommendation of a sentence of life imprisonment. Defendant's motion to bypass the Court of Appeals in two cases, one involving a conviction of second-degree murder and a sentence of life in prison and the other involving a conviction for assault with a deadly weapon with intent to kill inflicting serious injury, allowed 12 April 1993. Heard in the Supreme Court 13 October 1993.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Mark Galloway for defendant-appellant.*

STATE v. TERRY

[337 N.C. 615 (1994)]

EXUM, Chief Justice.

Defendant raises five assignments of error from the guilt determination proceeding and two from the sentencing proceeding in the second-degree murder case (91 CRS 6412). We find one of the assignments of error from the sentencing phase meritorious and order that defendant be resentenced in the second-degree murder case.

I.

Defendant was convicted of first-degree murder of Timothy Pernell (91 CRS 6413) under the felony-murder rule, of second-degree murder of David Talley (91 CRS 6412) and of assault with a deadly weapon with intent to kill inflicting serious injury upon Shelton Peoples, Jr. (91 CRS 6414). After a capital sentencing proceeding in No. 91 CRS 6413, the jury recommended and the trial court imposed a sentence of life imprisonment. In the Talley second-degree murder case, defendant was sentenced to life imprisonment. The trial court arrested judgment in the assault case because the assault was used as the underlying felony in the felony-murder conviction.

On the night of 23 August 1991, defendant and his friend Thomas Perry encountered an altercation between two groups of people at the Variety Pick-Up in Kittrell, North Carolina. Defendant and Perry intervened, and defendant ultimately shot three men, killing two of them, David Talley and Timothy Pernell, and wounding the third, Shelton Peoples. At trial defendant did not deny firing the shots but claimed he acted in self-defense and in defense of others.

The State's evidence tended to show that on the night in question, Shelton Peoples was drinking beer and hanging sheetrock with his friends David Talley and Timothy Pernell at Pernell's house. Informed that his daughter was sick, Peoples drove to see her at his mother-in-law's home. Upon finding her healthy, Peoples drove back toward Pernell's house. He stopped at the Variety Pick-Up along the way to make a phone call, parking his pickup truck in front of the phone outside the store.

While on the phone, Peoples told Harvey Bolden and Jimmy Alston, who were standing nearby, to "shut up." Some words were exchanged, but the situation calmed down when Talley and Pernell drove up and parked their pickup truck behind Peoples' truck. Peoples, Talley and Pernell then entered the store to purchase cigarettes and beer.

Upon returning to his truck, Peoples was accosted by Bolden, who struck a boxer's pose and said, "I'll kick your ass." When Bolden tried to hit Peoples, Peoples pushed him to the ground. By this time, defendant and Perry had arrived at the Variety Pick-Up, parking their car near the gas pumps. Noticing the fight, these two men walked over, and Perry kicked Peoples from behind. Pernell attempted to separate Peoples from Bolden and Alston. One of the store owners came outside and threatened to call 911 unless everyone left. Peoples, Talley and Pernell began to return to their trucks.

Peoples was unable to back up his truck until Talley moved the other truck. While Peoples waited, Bolden punched Peoples through the open window of Peoples' truck, and another fight ensued. Talley began to struggle with Perry and another man. Defendant ran over and hit Talley in the back of the head. Talley then got a stick from his truck, and Peoples saw defendant "run from the area."

Defendant soon returned with a pistol tucked into the waistband of his shorts, stopped roughly 15 feet from Peoples, pointed the gun at his head, and said, "Now what you gonna do, white boy?" Defendant then shot Peoples twice, once in the wrist and once in the abdomen. Moving a couple of feet closer to the other men, defendant next shot Talley once in the abdomen and twice in the back. Defendant then shot Pernell once in the chest. Defendant fired all six shots in less than two seconds.

After felling his victims, defendant called to Perry: "Come on, man. Let's get out of here." The two then jumped in their car and sped away. In the car defendant told Perry, "I shot three white guys."

The next day defendant presented himself at the sheriff's department and asked if there were any warrants outstanding for his arrest. When the Sheriff arrived, defendant was led to the sheriff's office where he was questioned. In response to questioning, defendant stated he had been at his girlfriend's house the previous night. He was then arrested, advised of the charges against him and advised of his rights. He had no further contact with the arresting officers and made no further statements until he testified at trial.

Defendant's evidence tended to show a quite different version of the events:

From a blood sample taken at the hospital following the altercation, Peoples' blood alcohol content was found to be .14. Talley and Pernell were similarly intoxicated. Peoples was also angry that a

STATE v. TERRY

[337 N.C. 615 (1994)]

friend had told him his daughter was sick when, in fact, she was not. Peoples was emotionally agitated when he got out of his truck to use the phone.

Harvey Bolden and Jimmy Alston were standing outside the store near the phone. Bolden threw a cigarette on the ground, and Peoples walked up and called Bolden a "nigger litter bug." The two began arguing, and Peoples pushed Bolden to the ground. Defendant and Perry came over to break up the fight as did Talley and Pernell. Perry pulled Bolden away and Talley and Pernell put Peoples into his pickup truck.

Bolden went to Peoples' truck, pointed his finger at Peoples and said he was going to "get him." Peoples got out of the truck and said, "I'll shoot and kill all of you all niggers." Peoples then began to swing wildly at Bolden and Perry, striking Perry in the face. Bolden, Alston, and their friend Tommy Fogg fled the scene. Either Talley or Pernell said, "Yeah, we will kill them." One of these men retrieved a stick from Talley's truck and struck Perry, knocking him to the ground. Peoples then obtained a stick and hit defendant with it three times across the shoulders and back.

Defendant was on his knees, trying to protect himself. He managed to get up, back towards his car and draw the pistol which had been in his shorts throughout the incident. Peoples continued after defendant, and defendant warned him twice to "Get back; get back off me." Peoples rushed defendant with the stick, and defendant shot him when he was six or seven feet away. The first shot did not stop Peoples so defendant shot him again, causing Peoples to fall. Defendant knew Talley and Pernell were behind Peoples but was not thinking about them and did not know where he was shooting: "I was just shooting. I was just shooting." After Peoples fell, defendant realized he was still pulling the trigger but the gun had stopped firing. Defendant told Perry, "Let's go," and the two drove away. Defendant did not see Talley or Pernell fall; he did not say anything to Perry once in the car.

The next day, defendant voluntarily went to the sheriff's department after his mother told him the police had been by her house looking for him. Several law enforcement officials escorted defendant to the sheriff's office at which point they surrounded him and began asking him questions. When defendant stated he had been at his girlfriend's house the night before, he had not yet been read his rights nor did he believe he was free to leave.

Defendant testified he purchased the gun in question only the day before the incident for the protection of his girlfriend and their two children. He had the gun on his person the night of the shooting because he was taking it to his girlfriend's apartment. Defendant threw the gun away after the shooting.

## II.

## Guilt/Innocence Phase

### A.

[1]  In the Pernell murder case defendant assigns error to the trial court's submission of first-degree felony murder to the jury on the ground that there was an insufficient connection between the murder and the underlying felony of felonious assault. Defendant argues "the homicide was not done to escape or to complete the assault and there was no causal relationship between the assault and the homicide." Defendant also contends that because the underlying felony failed to create "a substantial foreseeable risk" to others it cannot be the basis for felony murder. None of these conditions are required by law; and because we conclude there was sufficient evidence of the necessary interrelationship between the felonious assault and the murder, we find no error in the submission of this murder on a felony-murder theory.

First-degree felony murder is any killing "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C.G.S. § 14-17 (1993). In 1977 the General Assembly substituted the phrase "or other felony committed or attempted with the use of a deadly weapon" for the phrase "or other felony." 1977 N.C. Sess. Laws ch. 406.

Under the statute as amended the underlying felony must be either enumerated in the statute or "committed or attempted with the use of a deadly weapon," and some interrelationship must exist between the underlying felony and the homicide. *State v. Barlowe*, 337 N.C. 371, 380, 446 S.E.2d 352, 358 (1994) ("Application of the felony-murder rule requires that there be an interrelationship between the felony and the homicide."). In *State v. Fields*, 315 N.C. 191, 197, 337 S.E.2d 518, 522 (1985), we stated:

A killing is committed in the perpetration or attempted perpetration for the purposes of the felony murder rule where there is no

break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.

The law does not require that the homicide be committed to escape or to complete the underlying felony in order to apply the felony-murder principle. We have said that "escape is ordinarily within the *res gestae* of the felony and that a killing committed during escape or flight is ordinarily within the felony-murder rule." *State v. Squire*, 292 N.C. 494, 512, 234 S.E.2d 563, 573 (1977), *cert. denied*, *Brown v. North Carolina*, 434 U.S. 998, 54 L. Ed. 2d 493 (1977) (citing Erwin S. Barbre, Annotation, *What Constitutes Termination of Felony for Purpose of Felony-Murder Rule*, 58 A.L.R. 3d 851, 876); *see People v. Salas*, 7 Cal.3d 812, 103 Cal. Rptr. 431, 500 P.2d 7 (1972), *cert. denied*, 410 U.S. 939, 35 L. Ed. 2d 605 (1973). This does not mean that the killing *must* be committed to effect an escape from the underlying felony. Furthermore, under *Barlowe* and *Fields* there need not be a "causal relationship" between the underlying felony and the homicide, only an "interrelationship." Finally, as a result of the 1977 Amendment to N.C.G.S. § 14-17, the requirement that the underlying felony must create "a substantial, foreseeable risk to human life" is no longer applicable. *State v. Davis*, 305 N.C. 400, 423-24, 290 S.E.2d 574, 588 (1982).

Here defendant was convicted of assault with a deadly weapon with intent to kill inflicting serious injury, N.C.G.S. § 14-32 (1993), a felony involving use of a deadly weapon and thus within the purview of the felony-murder statute, N.C.G.S. § 14-17. An interrelationship clearly existed between this felonious assault and the homicide in that the assault of Peoples and the killing of Pernell were part of an unbroken chain of events all of which occurred within two seconds.

## B.

[2] Defendant next assigns error to the trial court's instruction to the jury that "one may only do in defense of a third person what that other person might do in his own defense." Defendant contends this instruction is prejudicial in that it implies the jury should judge the reasonableness of defendant's actions in defending Perry from the circumstances as they appeared to Perry and not as they appeared to defendant. Since Perry was in a better position to know that Talley was only wielding a yardstick, defendant argues that his, defendant's, actions might well appear unreasonable if considered from Perry's perspective. We conclude, for the reasons which follow, that the chal-

STATE v. TERRY

[337 N.C. 615 (1994)]

lenged instructions, when considered in context, were not likely to have conveyed to the jury this erroneous version of the law of defense of another.

In general one may kill in defense of himself or another if one believes it to be necessary to prevent death or great bodily harm to himself or the other and has a reasonable ground for such belief, the reasonableness of this belief or apprehension to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the killing. *See State v. Kirby*, 273 N.C. 306, 160 S.E.2d 24 (1968); *State v. McLawhorn*, 270 N.C. 622, 155 S.E.2d 198 (1967); *State v. Hornbuckle*, 265 N.C. 312, 144 S.E.2d 12 (1965). The challenged instruction is taken from *McLawhorn* and means simply that the right to kill in defense of another cannot exceed such other's right to kill in his own defense as that other's right reasonably appeared to defendant.

A jury instruction must be such that a reasonable juror can understand the law arising on the evidence in the case; "the jury should see the issues, stripped of all redundant and confusing matters, and in as clear a light as practicable." *Stern Fish Co. v. Snowden*, 233 N.C. 269, 271, 63 S.E.2d 557, 559 (1951). In meeting this standard, a trial court has some leeway:

> This Court has repeatedly held that a charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct. If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal . . . . The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred.

*State v. Tilley*, 292 N.C. 132, 145-46, 232 S.E.2d 433, 442-43 (1977) (citations omitted).

Applying *Stern Fish Co.* and *Tilley* to the instant case, we believe the contested instruction, "construed contextually," enabled the jury to see the issue in "as clear a light as practicable." The full jury instructions, including the challenged portion, as they were likely to have been understood by the jury, convey a correct version of the law of defense of another. The challenged portion of the instruction directly follows the jury charge "to determine the reasonableness of

the defendant's belief from the circumstances as they appeared *to him* at the time." At several other junctures throughout the jury charge on self-defense and defense of others, the trial judge emphasized "that the defendant had the right to use only such force as *reasonably appeared to him* to be necessary under the circumstances to protect himself or a third person from death or great bodily harm." Rational jurors, construing the contested instruction in context with the "to him" language, could only conclude that they must view the reasonableness of defendant's actions from defendant's own perspective and not from the defended person's perspective.

C.

[3] Defendant further assigns error to the trial court's denial of his motion to suppress his out-of-court statement made to investigators in the sheriff's office that he had been at his girlfriend's house the night of the murder. Defendant contends this statement was taken in violation of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Defendant argues that he was in custody when the statement was made and had not been advised of his rights according to *Miranda* when he made his statement. Defendant contends the admission of this statement was prejudicial in that it contradicted his defense of self-defense and defense of others. We need not determine whether the trial court erred by admitting defendant's statement because defendant waived his objection to its admission when he testified on direct examination that he had made this statement, that the statement was not true, and that he made it because he was afraid of going to jail.

"[W]here evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984); 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 22 (4th ed. 1993). While the Constitutions of the United States and North Carolina protect a defendant's privilege against compulsory self-incrimination, a defendant who testifies to the same facts that he alleges to be inadmissible and then fails "to claim that his in-court testimony was compelled or impelled by the trial court's errors . . . [has] cured the errors of the trial judge and rendered them harmless." *State v. McDaniel*, 274 N.C. 574, 584, 164 S.E.2d 469, 475 (1968). In *McDaniel* we stated:

To hold that a defendant in a criminal action, once evidence has been erroneously admitted over his objection, may then take the

stand, testify to exactly the same facts shown by the erroneously admitted evidence, and from that point embark upon whatever testimonial excursion he may choose to offer as justification for his conduct, without thereby curing the earlier error, gives to the defendant an advantage not contemplated by the constitutional provisions forbidding the State to compel him to testify against himself.

*Id.* at 584, 164 S.E.2d at 475.

After conducting a *voir dire* hearing in response to defendant's motion to suppress, the trial court permitted the State to introduce defendant's statement through the testimony of Special Agent Steven Jones, a State Bureau of Investigation specialist present when defendant made the statement. Defendant subsequently testified on direct examination that he did make the statement, explaining that he did so because he was afraid of going to jail. Because defendant has not claimed that he was impelled to give this testimony as a direct result of the trial court's earlier admission of his statement into evidence, this testimony waives defendant's objection to and renders harmless any error the trial court may have made in denying defendant's motion to suppress.

### D.

**[4]** Defendant next assigns error to the trial court's "permitting the State to argue in summation that defendant knew the pistol used to shoot the victims had a serial number." Defendant maintains that such an argument implies he knowingly purchased a stolen gun, stole the gun himself, or removed its serial number, and that such implications are prejudicial and in violation of N.C.G.S. § 8C-1, Rule 404(b) (1992) ("Evidence of other crimes, wrongs or acts is not admissible . . . to show that [defendant] acted in conformity therewith."). We find no reversible error.

The challenged argument, placed in context, is as follows:

Members of the jury, when he threw that gun away, he threw away all possibility of tracing that gun. I would argue that the defendant is intelligent enough to know he had no business buying a .357 magnum from a man strolling down the street here in Henderson. It could be a common occurrence, but he knew he had no business doing that. *If he had that gun in his possession for any length of time at all he would have known that the gun had a serial number on it, and that gun came from somewhere—*

Alston: Objection.

Court: Overruled.

By Ellis:

*—and he didn't ask where it came from because he didn't want to know.* When he threw that gun in the trash, he did it so that we . . . would not have the whole truth.

The prosecutor's comment clearly infers that defendant knowingly purchased a stolen handgun.

Even if the implication that defendant knowingly purchased a stolen handgun was improper argument, there being no evidence to support it, the defendant has been unable to sustain the burden of showing prejudice. *See* N.C.G.S. § 15A-1443(a) (1988) ("A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."). This inference was not prejudicial to the defendant given the state of the evidence of defendant's guilt: Defendant admitted shooting Peoples; Peoples identified defendant as the assailant; defendant's friend, Perry, testified defendant admitted to shooting three men. The defense was self-defense and defense of others. The thrust of the prosecutor's argument was that defendant threw the weapon away so that its ownership could not be traced and the full evidence against him could not be shown. The persuasiveness of this argument stands undiminished and only slightly enhanced by the suggestion that the weapon might have been stolen. We are confident that the implication made by the prosecutor's summation that defendant might have knowingly purchased a stolen weapon had slight, if any, effect on the jury's rejection of the defenses proffered by defendant and that the outcome of the trial would have been the same had the prosecutor's summation not carried this implication. This assignment of error is, therefore, overruled.

E.

**[5]** Defendant further argues the trial court committed error when it overruled his objection to the prosecutor's closing argument in opposition to the defense of self-defense in which the prosecutor stated, "With my back to you, how can I threaten you with a deadly force?" Defendant says this statement by the prosecutor misrepresented the evidence. We disagree.

Argument of counsel must be left to the discretion of the trial judge, and counsel are allowed wide latitude in their summations to the jury; counsel may argue the law, the evidence and all reasonable inferences which may be drawn from the evidence. *See State v. Riddle*, 311 N.C. 234, 319 S.E.2d 250 (1984); *State v. Paul*, 58 N.C. App. 723, 294 S.E.2d 762, *review denied*, 307 N.C. 128, 297 S.E.2d 402 (1982). An attorney may, during a closing argument, "on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C.G.S. § 15A-1230(a) (1988).

In the case at bar, there was sufficient evidence adduced to support an inference that the victim Talley was either standing with his back turned to defendant or was attempting to flee when he was shot. Medical Examiner Dr. Deborah Radisch testified that Talley was shot three times, once in the abdomen and twice in the back. The State acted properly in arguing permissible inferences from this evidence.

## III.

## Sentencing Phase

[6] Defendant assigns error to the trial court's finding as a nonstatutory aggravating factor in the second-degree murder case that "this murder was part of a course of conduct in which the defendant engaged and that course of conduct included the commission by the defendant of other crimes of violence against person or persons." Defendant argues such finding in aggravation is prohibited by our decision in *State v. Westmoreland*, 314 N.C. 442, 334 S.E.2d 223 (1985). We agree.

In *Westmoreland* we stated:

[A] conviction of an offense covered by the Fair Sentencing Act may not be aggravated by contemporaneous convictions of offenses joined with such offense. In the case before us the trial judge did not explicitly use defendant's convictions as aggravating factors. Rather, he relied on defendant's murderous course of conduct in committing the offenses that support the convictions . . . . Whatever name is given to it, the effect of the trial judge's action was to use defendant's contemporaneous convictions of joined offenses as an aggravating factor in violation of the rule of *Lattimore*.

*Id.* at 449, 334 S.E.2d at 228; *State v. Hayes*, 323 N.C. 306, 314-15, 372 S.E.2d 704, 709 (1988); *see State v. Lattimore*, 310 N.C. 295, 311

IN RE LEGG

[337 N.C. 628 (1994)]

S.E.2d 876 (1984). In *Lattimore* the trial judge found contemporaneous attempted robbery and second-degree murder charges as aggravating factors for each other; as a result, we decided that to "permit the trial judge to find as a non-statutory aggravating factor that the defendant committed the joinable offense would virtually eviscerate the purpose and policy of [the sentencing statute]." *Id.* at 299, 311 S.E.2d at 879.

Here, the offenses of first-degree murder and assault with a deadly weapon are joined offenses for which defendant was convicted contemporaneously with his conviction for second-degree murder, a Class C felony covered by the Fair Sentencing Act. See N.C.G.S. §§ 14-17 and 15A-1340.4. The trial judge, in finding these offenses to have established a "course of conduct" in aggravation of second-degree murder, violated our prohibition of such factors in *Westmoreland.*

Defendant, therefore, is entitled to resentencing in the second-degree murder case, in which the "course of conduct" aggravating factor will not be considered.

Since defendant makes no argument challenging specifically his felonious assault conviction and judgment was arrested by the trial court, this assault conviction is not properly before us for review. The result is:

No. 91CRS6413, First-Degree Murder, NO ERROR.

No. 91CRS6412, Second-Degree Murder, NO ERROR in guilt determination, REMANDED FOR RESENTENCING.