Chief Justice MARTIN concurring.
This case is about what a man did in the few seconds after he saw his cousin get shot. We now have to consider that man's response to this violent event in light of the doctrines of self-defense and defense of another under our stand-your-ground statutes.
I agree with the majority's ruling that the trial court erred by not instructing the jury *568 on defendant's ability to lawfully stand his ground in self-defense. I therefore fully join in the majority opinion. I write separately to note that defendant has also argued that the trial court should have instructed the jury on defense of another, and to observe that the trial court's omission of an instruction on that defense also constituted error.
"[A] judge has an obligation to fully instruct the jury on all substantial and essential features of the case ... arising on the evidence." State v. Harris , 306 N.C. 724, 727, 295 S.E.2d 391, 393 (1982). This obligation arises "[r]egardless of requests by the parties," id. , and a trial court commits error if it fails to meet this obligation, see State v. Todd , 264 N.C. 524, 531, 142 S.E.2d 154, 159 (1965). Our Court has applied this standard specifically to jury instructions on both self-defense and defense of another. See id. ; State v. Montague , 298 N.C. 752, 755, 259 S.E.2d 899, 902 (1979). Articulating a principle that should apply equally to defense of another, this Court has stated that, "[w]here there is evidence that [a] defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in [the] defendant's evidence." State v. Dooley , 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974) ; see also State v. Mash , 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citing State v. McCray , 312 N.C. 519, 529, 324 S.E.2d 606, 614 (1985) ) ("When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense ..., courts must consider the evidence in the light most favorable to [the] defendant.").
**678 Under our State's common law, one could "kill in defense of another if one believe[d] it to be necessary to prevent death or great bodily harm to the other 'and ha[d] a reasonable ground for such belief.' " State v. Perry , 338 N.C. 457, 466, 450 S.E.2d 471, 476 (1994) (quoting State v. Terry , 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994) ). The reasonableness of the defender's belief was "to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the killing." Id. (quoting Terry , 337 N.C. at 623, 447 S.E.2d at 724 ).
Two additional common law rules limited the scope of this doctrine. This Court stated the first rule in State v. Gaddy : "[T]he right to defend another [could] be no greater than the latter's right to defend himself." See State v. Gaddy , 166 N.C. 341, 346-47, 81 S.E. 608, 610 (1914). Under the second rule, which appeared in State v. McAvoy and other cases, the initial aggressor in a conflict could not claim perfect self-defense. See, e.g. , State v. McAvoy , 331 N.C. 583, 595-96, 417 S.E.2d 489, 497 (1992) (citing State v. Norris , 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981) ). An aggressor who started a fight without murderous intent, however, would still have been entitled to claim imperfect self-defense. Id. at 596, 417 S.E.2d at 497 (citing Norris , 303 N.C. at 530, 279 S.E.2d at 573 ). As a result, under the common law rules in Gaddy and McAvoy , a defendant who intervened to defend someone who had started a fight without murderous intent would have been entitled to a jury instruction only on imperfect defense of another. If a defendant established imperfect defense of another, a jury could not have acquitted him but could have convicted him of voluntary manslaughter instead of murder. See id. (citing Norris , 303 N.C. at 530, 279 S.E.2d at 573 ).
In 2011, however, the General Assembly enacted N.C.G.S. §§ 14-51.3 and 14-51.4, which at least partially abrogated-and may have completely replaced-our State's common law concerning self-defense and defense of another.
Subsection 14-51.3(a) states that a person's use of non-deadly force is justified "when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against [someone else's] imminent use of unlawful force." N.C.G.S. § 14-51.3(a) (2017). That subsection then establishes that a person is justified in using deadly force when that person is in a place that "he or she has the lawful right to be," id. , and "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another," id. § 14-51.3(a)(1).
N.C.G.S. § 14-51.4 provides exceptions to the justifications for defensive force set forth in subsection 14-51.3(a), stating that "[t]he *569 **679 justification[s] described in ... [section] 14-51.3 [are] not available to a person who used defensive force" in certain enumerated circumstances. Id. § 14-51.4 (2017). Subsection 14-51.4(2) then gives one of these circumstances; it states that a person's use of defensive force is not justified when that person "[i]nitially provoke[d] the use of force against himself or herself." Id. § 14-51.4(2). This subsection does not create an exception to section 14-51.3, however, when a defendee-the person that a defendant acts to protect-provokes a fight with non-deadly force and a defendant then intervenes to protect that defendee from deadly force. In other words, when a defendant uses deadly force to protect an initial aggressor who used non-deadly force against an attacker who responds with deadly force, that defendant's actions are still fully justified under subsections 14-51.3(a)(1) and 14-51.4(2).
This statutory framework thus appears to contradict the common law rules in Gaddy and McAvoy when those rules are applied together, because it does not reduce a defendant's justification to imperfect defense of another in this context. That defendant can rightly claim perfect defense of another. Nor does the only other exception in section 14-51.4 reduce a defendant's justification for the use of deadly force stated in subsection 14-51.3(a)(1) from perfect to imperfect defense of another; that exception states only that a person is not justified in using defensive force under section 14-51.3 if the person "[w]as attempting to commit, committing, or escaping after the commission of a felony." Id. § 14-51.4(1). So, under this statutory framework, a defendant who uses deadly force to protect an initial aggressor who used non-deadly force against an attacker who responds with deadly force should be entitled to perfect self-defense, as long as that defendant was not attempting to commit or committing a felony, or escaping after committing a felony, in the process.
It is important to note the statutory limits of the justification defense in subsection 14-51.3(a). At first glance, one might think that a defendant could defend another against deadly force even when that other had initially provoked a fight with deadly force. But that is not so. Because the second sentence of subsection 14-51.3(a), in context, describes a heightened variant of the justification discussed by the first sentence-a justification sufficient to cover deadly as well as non-deadly force-the requirement from the first sentence that the hostile force being opposed be "unlawful" should be imputed to the second sentence. Thus, no justification is available for using deadly force to defend another against lawful force. If a defendee provokes a fight with deadly force, then the use of deadly force by the opposing combatant would be lawful.
**680 It follows that a defendant would not be justified under subsection 14-51.3(a)(1) in using deadly force himself against that opposing combatant to protect the defendee, as the defendant in that scenario would not be defending another against unlawful force. The justification for deadly force set forth in subsection 14-51.3(a)(1) is inherently limited in this way. Cf. State v. Holloman , 369 N.C. 615, 628-29, 799 S.E.2d 824, 833 (2017) (concluding that, when an initial aggressor provokes a fight using deadly force and the opposing combatant responds with deadly force, that aggressor is not justified in using deadly force in response under N.C.G.S. § 14-51.4(2)(a) ).
Turning to the case at hand, defendant was entitled to a jury instruction on perfect defense of another. Based on the evidence at trial, a jury could reasonably conclude the following: Defendant saw his cousin, Jamieal Walker, being repeatedly shot by Quinton Epps, after Walker had punched Epps in the face. Walker began to run away, with Epps still shooting at him, and then Epps immediately turned his gun toward defendant. At that point, defendant shot Epps "to get him to drop his weapon." The fact that Epps momentarily turned his gun away from Walker did not mean that Walker was instantly removed from mortal danger. Both Charles Bowser, an eyewitness, and defendant himself testified that the entire sequence of Epps' turning his gun away from Walker and toward defendant and defendant's shooting of Epps took, at most, "four seconds." While the Court of Appeals leaned heavily on the fact that Walker was already fatally wounded before defendant shot Epps, *570 State v. Lee , --- N.C. App. ----, ----, 789 S.E.2d 679, 689 (2016), defendant could not have known at that moment whether Walker's injuries were fatal or what chance Walker had of survival. Also, as the majority notes, defendant stated that he would have shot Epps sooner if Epps and Walker had not been so close together during their fight. I accept all of these facts as true for the purpose of deciding this issue.
Given these facts, Epps used deadly force against Walker after Walker had merely thrown a punch. That punch did not justify a reasonable belief on Epps' part that shooting Walker was necessary to prevent Epps from suffering death or great bodily harm, so Epps himself did not act in lawful self-defense under subsection 14-51.3(a)(1) when he shot Walker. This means that Epps' use of deadly force was unlawful, and defendant therefore could have defended Walker from it with deadly force. Defendant was in a public street, where he had a lawful right to be, and, because Epps had already shot Walker multiple times, defendant could have reasonably believed that his own use of deadly force was necessary to save Walker from death or further serious bodily **681 injury. This satisfies the standard for the use of deadly force in defense of another under subsection 14-51.3(a)(1). Thus, the trial court erred by omitting a jury instruction on defense of another.
In sum, the trial court did not instruct the jury on perfect defense of another, even though defense of another under N.C.G.S § 14-51.3(a)(1) was a "substantial and essential feature[ ] ... arising on the evidence" in this case. See Harris , 306 N.C. at 727, 295 S.E.2d at 393. The trial court erred by not instructing the jury on this defense. Defendant concedes that this issue was not properly preserved below, so this Court should review the issue only for plain error. I do not need to address whether the omission of this instruction rose to the level of plain error, however, as defendant will receive a new trial under the majority's ruling regardless. If the same or substantially similar evidence is presented at a future trial of defendant, the trial court should instruct the jury on the law concerning perfect defense of another. The jury should not be precluded from considering any reasonable explanation of defendant's actions right after he saw his cousin get shot.