IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-477

Filed 02 May 2023

Guilford County, Nos. 17 CRS 88458–59

STATE OF NORTH CAROLINA

v.

ROBERT LEE LAMB, JR.

Appeal by defendant from judgment entered 11 October 2019 by Judge Lora Christine Cubbage in Guilford County Superior Court. Heard in the Court of Appeals 7 March 2023.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Robert T. Broughton, for the State.*
>
> *Sharon L. Smith for defendant-appellant.*

ZACHARY, Judge.

Defendant Robert Lee Lamb, Jr., appeals from a judgment entered upon a jury's verdicts finding him guilty of felony possession of cocaine, misdemeanor possession of up to one-half ounce of marijuana, and misdemeanor possession of drug paraphernalia. After careful review, we dismiss Defendant's appeal.

## I. Background

At approximately 4:00 a.m. on 22 October 2017, Detective[1] Michael Lewis of the Guilford County Sheriff's Office initiated a traffic stop of a vehicle that he observed driving with revoked tags. The vehicle contained two occupants: the driver and Defendant. Detective Lewis noticed the odor of marijuana as he approached, requested the assistance of additional law enforcement officers, and asked each occupant to exit the vehicle.

Master Corporal Todd Riddle and Deputy Diaz[2] arrived on the scene shortly thereafter; Master Corporal Riddle stood by the vehicle's occupants, while Deputy Diaz assisted Detective Lewis in searching the vehicle. Detective Lewis discovered marijuana in the ashtray and a book bag in the back seat. Detective Lewis asked the occupants to whom the book bag belonged, and Defendant replied that the bag was his. A search of the bag revealed a digital scale and a lockbox, from which emanated the odor of marijuana.

Detective Lewis then asked Defendant if he had a key to open the lockbox; Defendant replied that he did not, and that the lockbox was not his. Detective Lewis pried open the lockbox with a pocketknife and discovered within a small handgun; a white, powdery substance that he believed to be cocaine; a dollar bill on which there was a white, powdery residue; multiple small, blue plastic baggies; a glass jar with a

---

[1] Detective Lewis had the rank of deputy on the morning of 22 October 2017, but had attained the rank of detective by the time that he testified at trial. For consistency and ease of reading, we refer to him as Detective Lewis.

[2] Deputy Diaz's first name is not disclosed in the record on appeal.

pink, crystallized substance inside; and multiple pills. Defendant was arrested and charged with possession with intent to sell or distribute alprazolam, possession with intent to sell or distribute cocaine, and possession of drug paraphernalia.

On 14 May 2018, a Guilford County grand jury returned indictments charging Defendant with two counts of possession with intent to sell or distribute a controlled substance (one for alprazolam and one for cocaine), misdemeanor possession of drug paraphernalia, and misdemeanor possession of marijuana.

On 6 September 2019, Defendant filed a motion to suppress evidence obtained by warrantless searches, and on 11 September 2019, Defendant filed another motion to suppress evidence obtained in violation of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). On 12 September 2019, Defendant's motions to suppress came on for hearing. The trial court denied both of Defendant's motions in open court and by order entered the next day.

On 2 October 2019, the matter came on for trial. At the outset, Defendant's counsel informed the trial court that he did not anticipate that Defendant would put on any evidence.

Detective Lewis testified first for the State. When Detective Lewis was questioned about his investigation of the book bag, Defendant objected based upon the grounds stated in his motions to suppress, which the trial court again overruled. Detective Lewis testified that when he asked "who the [book bag] belonged to[,]" Defendant stated that the book bag belonged to him. Defendant also objected when

Detective Lewis was about to testify as to Defendant's answer to whether he had the key to the lockbox, again based on the prior motion to suppress, which this time the trial court sustained.

On cross-examination, defense counsel questioned Detective Lewis about Defendant's statement regarding his ownership of the lockbox, and the State objected on hearsay grounds. The trial court excused the jury and Defendant conducted a voir dire of Detective Lewis. The State contended that Defendant's statements that he did not have a key to the lockbox and that the lockbox was not his were "self-serving" statements that did not fall within any hearsay exception, and were therefore inadmissible because Defendant would not be "subject to cross-examination[.]" The trial court sustained the State's objection.

Before the jury returned, defense counsel asked the trial court whether Defendant could reconsider his initial decision not to testify on his own behalf:

> [DEFENDANT'S COUNSEL]: Okay. If I can't -- if I can't get this -- you know, I -- I may have to revisit that.
>
> THE COURT: Okay. But if you -- if you go there with this witness --
>
> [DEFENDANT'S COUNSEL]: Right.
>
> THE COURT: -- you're going to put your client up so [the State] can cross-examine him.
>
> [DEFENDANT'S COUNSEL]: I understand.
>
> THE COURT: Okay.
>
> [DEFENDANT'S COUNSEL]: Could I -- could I briefly

speak to him?

THE COURT: Sure. Uh-huh.

After some discussion, Defendant's counsel stated that Defendant would take the stand in order to "confirm" his statements, and requested that the trial court revisit its ruling on the State's objection:

> Please the court, I am going to -- I intend -- I know what I said early on, but based on the -- the ruling I'm going to go ahead and -- and confirm that [Defendant] is going to take the stand to confirm what he said and also subject himself to cross-exam[ination] in this case.
>
> So I am asking to ask those questions since -- since that issue is no longer -- [the State will] have an opportunity to cross-examine him on that, ask any questions [it] wants to.

The trial court agreed to let Defendant proceed with his cross-examination of Detective Lewis. When the jury returned, Defendant asked Detective Lewis to confirm that Defendant stated that he did not have a key for the lockbox and that the lockbox was not his, which Detective Lewis did.

Meanwhile, the State voluntarily dismissed the charge of possession with intent to sell or distribute alprazolam. After the close of the State's evidence, Defendant took the stand to testify on his own behalf. Defendant testified, *inter alia*, that although the book bag was his, neither the digital scale nor the lockbox discovered inside belonged to him. Consequently, Defendant continued, he did not "have a key to the lockbox" because "it was not [his] box."

After deliberating, the jury returned its verdicts finding Defendant guilty of

felony possession of cocaine (a lesser-included charge of possession with intent to sell or distribute cocaine); misdemeanor possession up to one-half ounce of marijuana; and misdemeanor possession of drug paraphernalia. The trial court consolidated the convictions into a single judgment, sentenced Defendant to a term of 4 to 14 months in the custody of the North Carolina Division of Adult Correction, then suspended that sentence and placed Defendant on supervised probation for a period of 12 months.

Defendant timely filed notice of appeal.

## II.  Discussion

Defendant argues that the trial court erred (1) by denying his motion to suppress evidence obtained in violation of his *Miranda* rights,[3] and (2) by initially limiting his cross-examination of Detective Lewis. In response, the State argues, *inter alia*, that Defendant waived appellate review of these issues by subsequently eliciting and even testifying to the same evidence that he now argues was erroneously admitted. For the reasons that follow, we agree with the State.

"Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Terry*, 337 N.C. 615, 624, 447 S.E.2d 720, 725 (1994) (citation omitted). Although a defendant's privilege against compulsory self-incrimination is

---

[3] Defendant does not challenge the trial court's denial of his motion to suppress evidence obtained as a result of the warrantless searches.

constitutionally protected, "a defendant who testifies to the same facts that he alleges to be inadmissible and then fails to claim that his in-court testimony was compelled or impelled by the trial court's errors has cured the errors of the trial judge and rendered them harmless." *Id.* (citation and internal quotation marks omitted); *see also* N.C. Gen. Stat. § 15A-1443(c) (2021) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct.").

Here, Defendant's *Miranda* argument concerns his statement regarding his ownership of the book bag, while his cross-examination argument concerns his desire to elicit testimony from Detective Lewis "regarding his interrogation of [Defendant] about the lockbox and its key." As the State correctly observes, however, *Defendant* testified that "[t]he book bag was mine" when he took the stand in his case-in-chief. Defendant thus "testifie[d] to the same fact[ ] that he alleges to be inadmissible" in his first argument on appeal. *Terry*, 337 N.C. at 624, 447 S.E.2d at 725. Further, our careful review of the transcript reveals that Defendant's counsel also elicited testimony about this same statement on cross-examination of Detective Lewis.

Similarly, the State suggests that, with regard to Defendant's cross-examination argument, "the same testimony initially excluded by the trial court was later admitted during both the State's case-in-chief and Defendant's case-in-chief[.]" Indeed, after Defendant informed the trial court that he intended to change his trial strategy and testify on his own behalf, the trial court allowed the cross-examination that it initially limited. Consequently, Defendant was permitted to elicit testimony

from Detective Lewis that Defendant had informed Detective Lewis that "the box belong[ed] to his friend and [Defendant did] not have a key for it[.]" Deputy Diaz also testified to this same statement by Defendant, absent any subsequent objection from Defendant. And when Defendant later took the stand, during both his direct examination and upon cross-examination, he testified that he did not "have a key to the lockbox[.]"

In summary, all of the statements central to Defendant's arguments on appeal were admitted into evidence several times, either without objection by Defendant, during Defendant's cross-examination of the State's witnesses, or during Defendant's own testimony. Accordingly, both issues are susceptible to waiver as unpreserved or invited error.

Nevertheless, Defendant argues that the trial court's decision to limit his cross-examination of Detective Lewis "forced [Defendant] to take the stand in his own defense" and prejudiced him by "open[ing] himself to cross-examination regarding his prior, unrelated arrest for assault . . . and whether he lied to police in conjunction with that arrest." To the extent that this argument implicates our Supreme Court's suggestion that a *Miranda* issue might not be waived if the defendant "claim[s] that his in-court testimony was compelled or impelled by the trial court's errors[,]" we conclude that Defendant was not, in fact, "compelled or impelled" to testify by the trial court's initial decision to limit cross-examination in this case. *Id.* (citation omitted).

When the trial court sustained the State's objection to Defendant's cross-examination of Detective Lewis regarding the key to the lockbox, the trial court ruled that Defendant's statement would be inadmissible hearsay "if [Defendant was] not putting up any evidence." Defendant was then faced with a choice of trial strategy: continue with his initial plan not to testify and leave the hearsay ruling intact, or change his trial strategy and testify on his own behalf in order to render his statement concerning the key to the lockbox admissible. The trial court did not compel Defendant to testify on his own behalf, however. That was a matter of trial strategy, and "matters of trial strategy . . . are not generally second-guessed by" our appellate courts. *State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003).

As the State argues in its brief: "A side effect of that strategy decision, however, is the waiver of Defendant's prior efforts to preserve for appellate review the trial court's ruling suppressing that same statement." Each of Defendant's arguments on appeal concern the allegedly erroneous admission of statements that were ultimately admitted repeatedly at trial, absent Defendant's objection and, in some instances, by Defendant's own testimony. Defendant therefore "has cured the [alleged] errors of the trial judge and rendered them harmless." *Terry*, 337 N.C. at 624, 447 S.E.2d at 725 (citation omitted). Moreover, Defendant cannot show prejudice "by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c).

### III. Conclusion

We need not address the merits of either of Defendant's arguments on appeal, as Defendant has cured any alleged errors "and rendered them harmless" such that he is not entitled to appellate review. *Terry*, 337 N.C. at 624, 447 S.E.2d at 725 (citation omitted). We therefore dismiss Defendant's appeal.

DISMISSED.

Judges CARPENTER and WOOD concur.